FILED
United States Court of Appeals
Tenth Circuit

**July 15, 2014**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

 Plaintiff - Appellee,

v.

JOHN EDWARD MULLIKIN,

 Defendant - Appellant.

No. 13-1290
(D.C. No. 1:11-CR-00467-DME-1)
(D. Colo.)

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

---

Peter R. Bornstein of the Law Offices of Peter R. Bornstein, Greenwood Village, Colorado, for Defendant-Appellant.

J. Bishop Grewell, Assistant United States Attorney (John F. Walsh, United States Attorney, with him on the brief), Denver Colorado, for Plaintiff-Appellee.

---

Before **HOLMES, McKAY,** and **BACHARACH,** Circuit Judges.

---

**McKAY**, Circuit Judge.

---

 In 2008, the Food and Drug Administration's Office of Criminal Investigation opened an investigation into two purported clinical weight-loss studies. Participants were solicited for these purported studies between 2006 and

2008 by Defendant John Edward Mullikin.  As a result of this investigation, Defendant was indicted by a grand jury sitting in the District of Colorado in November 2011.  The indictment consisted of nineteen counts of mail fraud.  Defendant was arrested in January 2012 at his residence.  In August 2012, a superseding indictment was filed asserting the same nineteen counts of mail fraud.  The superseding indictment alleged that Defendant's purported weight-loss studies were part of an "advance fee scheme" in which Defendant made false representations—such as promising the refund of initial deposits and compensation for participation—to induce participants to submit deposits which he had no intention of refunding.  (R. vol. 1 at 123.)  In September 2012, Defendant's residence was searched pursuant to a warrant.  Law enforcement officials seized two hard drives, a computer, two binders, and two folders during the search.

Prior to trial, Defendant filed a motion to suppress the evidence seized pursuant to the September warrant.  At a pretrial hearing, the district court denied the motion to suppress, determining that "the search and seizure were reasonable . . . based upon probable cause and that the Magistrate Judge did not commit any error in issuing the warrant."  (Final Pretrial Conference Tr, R. vol. 4 at 1736.)

At trial, evidence was presented that persuaded the jury to find Defendant

guilty of seventeen separate counts of mail fraud.[1] Defendant now appeals the district court's denial of his pretrial motion to suppress the evidence seized pursuant to the September warrant. In his appeal, Defendant challenges the district court's determination that the search of his residence was supported by probable cause. Particularly, Defendant argues the affidavit underlying the search warrant failed to establish probable cause that the items to be seized would be located at the residence. Defendant also argues the affidavit failed to establish a nexus between the criminal acts and the residence to be searched. Defendant further argues the list of items to be seized in the search warrant was impermissibly broad.[2]

Normally, when "reviewing the denial of a motion to suppress, this court views the evidence in the light most favorable to the government and upholds the district court's factual findings unless clearly erroneous," while reviewing de novo the district court's legal "[d]eterminations relating to the sufficiency of a

---

[1] Two of the nineteen counts articulated in the superseding indictment were dismissed because the alleged victims did not testify at trial.

[2] In his opening brief, Defendant conceded for the purposes of appeal that probable cause existed to search his residence for two envelopes discussed in a jailhouse telephone conversation relied on in the affidavit for the September search warrant. (Appellant's Opening Br. at 14.) Defendant sought to withdraw this concession in his reply brief. (Appellant's Reply Br. at 8.) Seeking to withdraw a concession in a reply brief and submitting arguments in support of that withdrawal is tantamount to raising arguments for the first time in a reply brief. "This court does not ordinarily review issues raised for the first time in a reply brief." *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000). Therefore, we will not permit Defendant to withdraw his original concession.

search warrant." *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000). However, we need not reach the merits of Defendant's arguments regarding the sufficiency of the underlying search warrant in a case such as this where, "assuming *arguendo* that the district court erred [in denying Defendant's motion to suppress], any error was harmless beyond a reasonable doubt." *United States v. Mikolon*, 719 F.3d 1184, 1188 (10th Cir. 2013).

Indeed, "[t]he Supreme Court has instructed that a constitutional error may be harmless." *Id.* (citing *Chapman v. California*, 386 U.S. 18, 22 (1967)). However, the government bears the burden to "prove beyond a reasonable doubt that an error is harmless." *United States v. Miller*, 111 F.3d 747, 751 (10th Cir. 1997). "In cases that are decided by a jury, a court will only find a constitutional error harmless if the court can conclude 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *United States v. Benard*, 680 F.3d 1206, 1213 (10th Cir. 2012) (quoting *Chapman*, 386 U.S. at 24). In other words, we must determine "whether the guilty verdict actually rendered in *this* trial was surely unattributable to the [alleged] error." *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) (italics in original). To accomplish this, we must consider the alleged error "in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Arizona v. Fulminante*, 499 U.S. 279, 308 (1991).

We hold that the government has met this burden and, even if evidence

-4-

seized pursuant to the September warrant was admitted in error, that admission was harmless and does not warrant reversal of Defendant's conviction.

At trial, the jury was instructed that Defendant could only be convicted of each count of mail fraud in the superseding indictment if the government established beyond a reasonable doubt the following elements for each individual count: (1) Defendant "devised or intended to devise a scheme to defraud, that is a scheme involving luring individuals throughout the United States into paying monies to participate in a bogus clinical study with the promise the monies would be returned along with further compensation"; (2) Defendant "acted with specific intent to defraud"; (3) Defendant "caused another person to mail something through the United States Postal Service for the purpose of carrying out the scheme"; and (4) "the scheme employed false representations that were material." (R. vol. 2 at 33 (Instruction No. 18) and R. vol. 4 at 1543-44; *see also United States v. Schuler*, 458 F.3d 1148, 1152 (10th Cir. 2006) (outlining essential elements of a mail fraud claim under 18 U.S.C. § 1341).)

The government marshaled a significant body of evidence at trial, which the jury considered in its decision to convict Defendant on all seventeen counts of mail fraud ultimately pursued by the government. Very little of the evidence produced at trial was seized in the search pursuant to the September warrant. Indeed Defendant only specifically identified four exhibits presented at trial (41, 44a, 44b, and 45) that he claims ought to have been suppressed by the district

court.  (Oral Argument (March 17, 2014) at 13:55-15:17.)  Defendant has

conceded these are the only four exhibits that we need consider in our harmless-

error analysis.  (*Id.*)[3]  Exhibits 41 and 44a are pictures, the former of a laptop

seized during the search of Defendant's residence and the latter of a desktop

computer, the hard drive of which was seized during that search.[4]  Exhibit 44b is

a copy of an electronic document regarding one of Defendant's purported studies

retrieved from one of the computers seized during the search.[5]  Finally, Exhibit 45

is a printed version of an email correspondence between Defendant and his father

in which Defendant offers various defenses against public allegations leveled

against him during a segment of *Good Morning America*.[6]

---

[3] We note here that Defendant failed to provide these exhibits as part of the record on appeal.  The government contends this failure constituted a waiver of Defendant's entire challenge to the admission of the contested evidence.  *Cf. United States v. McClatchey*, 217 F.3d 823, 835-36 (10th Cir. 2000) (holding that a challenge to the admissibility of evidence was waived where appellant failed to "provide citations to the record where [the challenged evidence] might be found").  We need not determine whether such oversight constitutes a waiver since we hold that even if Defendant's evidentiary challenge was not waived, the admission of the challenged evidence was harmless.

[4] While these exhibits were not included in the record on appeal, they are described in the trial transcript.  (*See* R. vol. 4 at 393-94, 397-99.)

[5] Again, while this exhibit was not included in the record on appeal, the document was described in witness testimony, and portions of it were read into the record as part of witness testimony. (*See* R. vol. 4 at 423-28.)

[6] Again, this exhibit was not included on the record on appeal.  However, it was described in witness testimony, and it was read into the record as part of witness testimony.  (*See* R. vol. 4 at 436-462, 479-482.)

In its effort to persuade us that any possible error was harmless beyond a reasonable doubt, the government points to a wealth of incriminating evidence unrelated to the four exhibits that Defendant claims were erroneously admitted. For instance, all seventeen victims of the seventeen counts of conviction testified at trial. The victims testified that Defendant's advertisements and websites induced them to apply to participate in what Defendant represented as legitimate weight-loss studies. They testified that the advertisements and websites claimed they would be compensated for their participation. They further testified that they were instructed to submit a payment through the mail and told the payment would be treated as a refundable deposit. Each victim testified to signing up and mailing a deposit to Defendant's purported weight-loss programs.[7] The victims' checks and money orders, endorsed by Defendant, were introduced into evidence through their testimonies. According to their testimonies, none of the victims received a refunded deposit or any other compensation. None of this evidence was based on any of the evidence seized at Defendant's home pursuant to the September warrant.

In arguing that the admission of the four exhibits identified for suppression was harmless, the government further points to damning evidence in Defendant's

---

[7] All but one of the victims testified to sending their checks and money orders via U.S. mail. The remaining victim could not remember whether she had sent hers in via U.S. mail or by some other carrier.

own testimony.  For instance, Defendant admitted to lying to the participants of his studies when he represented to them that the studies utilized a purported weight-loss drug that was a non-placebo, when in fact the drugs supplied were placebo products.  (R. vol. 4 at 1430.)  Defendant admitted to using a number of aliases in conjunction with his purported weight-loss studies.  (*Id.* at 1375, 1403-04, 1431.)  Furthermore, Defendant admitted to destroying records associated with his studies, including relevant financial and participant information.  (*Id.* at 1406.)

Defendant concedes he "did not challenge [at trial] the existence of the weight loss study, the payment by study participants of money, the use of a placebo, or the failure to make refunds."  (Appellant's Reply Br. at 9.)  Rather, Defendant challenged the government's contention that "he acted with the specific intent to defraud."  (R. vol. 4 at 259.)  To combat the intent element of the mail fraud charges, Defendant argued at trial that his weight-loss studies were designed "with the intent to make a positive contribution to knowledge and learning, and not with intent to defraud people out of money."  (*Id.* at 1570-71.)  Defendant accused the government of "cherry-picking" nineteen disgruntled participants out of several hundred participants, some of whom were allowed to participate without making a deposit.  (*Id.* at 1570.)  However, Defendant did not

present any of these purported hundreds of other participants to the jury.[8]

In response to evidence offered by the government indicating that Defendant liquidated funds related to the purported weight-loss studies (*id.* at 1196-97), Defendant offered an implausible story alleging a successful extortion attempt by one of his program participants "or someone known to her" (*id.* at 1459). This story was rebutted by the program participant, who testified she had never seen the purported extortion letters and she, like the other victims, signed up for one of Defendant's purported weight-loss studies and never received a refund of her deposit or any compensation. The postal inspector who investigated Defendant's extortion allegation when it was first alleged also testified there were "a lot of things that [he] found suspicious about the whole allegation." (*Id.* at 307.) Defendant further admitted he never followed up with law enforcement after the initiation of the investigation into the alleged extortion, despite the fact that he claimed the extortion "destroyed" his finances. (*Id.* at 1470.)

The government argues the inherent incredibility of Defendant's testimony, coupled with the multiple lies and falsehoods to which Defendant admitted in his testimony and Defendant's four criminal convictions of felony theft provided ample evidence for the jury to find beyond a reasonable doubt that Defendant

---

[8] In light of the fact that none of these alleged other participants were presented at trial, whether they would have told a more favorable story about their dealings with Defendant does not undermine the integrity of the jury's verdict regarding the evidence that was actually before it.

possessed the specific intent to defraud each of the seventeen victims who testified at trial. Furthermore, the government argues the jury's conclusion was not affected by the admission of the four exhibits now challenged by the Defendant.

After reviewing the challenged exhibits in light of the unrelated evidence introduced at trial we agree with the government that, even if the admission of Exhibits 41, 44a, 44b, and 45 was constitutional error, it was harmless beyond a reasonable doubt.

First, Exhibits 41 and 44a cannot have influenced the jury's conclusions regarding Defendant's intent to defraud since they are simply pictures of the computers seized during the search of Defendant's residence. Exhibit 44b is a document describing the role of the placebo effect underlying one of Defendant's purported studies. It also references another study that required a deposit prior to participation. This document's discussion of the placebo effect in relation to Defendant's purported weight-loss programs is duplicative of much of Defendant's testimony independent of Exhibit 44b or any other evidence seized pursuant to the September search of Defendant's residence. (*See e.g.*, *id.* at 1332-72.) As for this document's discussion of the practice of requiring deposits from participants, Defendant testified at trial that he had found this practice "was considered a helpful parameter in weight loss." (*Id.* at 1420.) Thus, the portion of Exhibit 44b that is not entirely duplicative was, under Defendant's theory of

-10-

the case, in fact exculpatory rather than inculpatory, since it allegedly served to justify his decision to require refundable deposits from the participants in his trials.

Finally, in light of all of the undisputably admissible evidence offered during the course of Defendant's eight-day jury trial, the admission of Exhibit 45, if erroneous, must be deemed harmless. As mentioned, Exhibit 45 is a copy of an email correspondence between Defendant and his father. In the correspondence, Defendant responded to public allegations leveled against him and his purported studies. Defendant specifically quoted portions of a transcript from critical coverage of his activities, which aired on *Good Morning America*, and responded to each quoted portion. This exhibit was originally submitted subject to a limiting instruction allowing the jury to only consider the statements attributable to Defendant for their truth and to consider statements from any other sources (e.g., Defendant's father and the *Good Morning America* transcripts) "to explain the context of the [D]efendant's response." (*Id.* at 439.) For the most part, this exhibit contained Defendant's defenses of his studies, which were largely articulated elsewhere in the trial transcript. The exhibit also includes an interchange in which Defendant's father asks Defendant not to get his mother and father "caught up in this mess." (*Id.* at 441.) However, this portion of their correspondence was admitted as a separate exhibit, Exhibit 56A, as "the source email to which [Defendant] responded to in [Exhibit] 45," and was independently

-11-

provided to the government and a law enforcement officer by Defendant's father. (*Id.* at 497-98.)  Therefore, the portion of Exhibit 45 originally written by Defendant's father need not be considered in our harmless-error analysis because it was also admitted through Exhibit 56A,[9] which is not being challenged on appeal.

When viewing the admission of these four challenged exhibits, the independent probative value of which is minimal, against the "the otherwise strong evidence against" Defendant admitted at trial, we are persuaded that, if the pretrial suppression motion was denied erroneously and the challenged exhibits were consequently admitted in error, any such error was harmless beyond a reasonable doubt.  *Mikolon* 719 F.3d at 1189.

Therefore, the district court's denial of Defendant's motion to suppress is **AFFIRMED.**

---

[9] As with the other exhibits discussed above, Exhibit 56A was not included in the record on appeal, but it was described as part of the witness testimony of Defendant's father.