**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 21, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

# UNITED STATES COURT OF APPEALS

# TENCH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAMES D. RUSSIAN,

Defendant - Appellant.

No. 15-3213

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 6:14-CR-10018-EFM-1)**

Daniel T. Hansmeier, Assistant Federal Public Defender (with Melody Brannon, Federal Public Defender, on the briefs), Office the Kansas Federal Public Defender, Topeka, Kansas, for Appellant.

Jared S. Maag, Assistant United States Attorney (with Thomas E. Beall, Acting United States Attorney, and Alan G. Metzger, Assistant United States Attorney, on the brief), Wichita, Kansas, for Appellee.

Before **TYMKOVICH**, Chief Judge, **McKAY**, and **BALDOCK**, Circuit Judges.

**TYMKOVICH**, Chief Judge.

James Russian was charged with four drug- and gun-related offenses.

Before trial, Russian filed a motion to suppress evidence obtained from the search

of two cell phones seized at the time of his arrest, arguing the search warrant was invalid for lack of particularity. The district court denied the motion, concluding even if the warrant was invalid, the good faith exception to the exclusionary rule applied.

At trial, text messages and photographs from the phones were introduced against Russian. After the jury convicted Russian on all counts, the court imposed a total sentence of 137 months' imprisonment. Russian challenges the admission of the evidence obtained from the cell phone searches, as well as the sentences imposed on several of the counts.

We affirm Russian's convictions. The officers conducting the search acted in objectively reasonable reliance on the warrant, and even if that were not the case, any Fourth Amendment error was harmless beyond a reasonable doubt. As for Russian's sentences, we remand for resentencing. The government does not dispute the district court erred in relying on an improperly calculated guidelines range for the sentences on the contested counts.

## I. Background

Missouri law enforcement responded to a 911 call reporting that two women were being threatened by a man with a machete and a handgun. The man was identified as James Russian. When officers arrived at the scene, a high-speed car chase ensued, which crossed state lines and ended in Kansas when Russian lost control of his vehicle and spun to a stop. Russian exited his vehicle, jumped

a fence, and fled into the woods, with law enforcement officers in pursuit. A short time later, Russian was found hiding under some brush and was taken into custody. One of the officers, Deputy Chris Wilson, searched Russian and found a red and black Samsung cell phone in one of his pockets, which Deputy Wilson then seized. After Russian was arrested, Deputy Wilson also searched his abandoned vehicle and found, among other things, a black Samsung cell phone.

Deputy Wilson applied for a search warrant with the state district court. The search warrant application identified three places to be searched: (1) a red and black Samsung cell phone found in Russian's possession at the time of his arrest, (2) a black Samsung cell phone taken from Russian's car at the time of his arrest, and (3) Russian's residence. The application also requested permission to seize "[t]ext messages, phone numbers, phone calls sent and received, any data contained within the phone or on any removable media device within the phone and Images contributing to the possession or sale of any illegal drug and drug paraphernalia." R. Supp. Vol. II. at 1.

The state district court issued a search warrant that referenced Deputy Wilson's affidavit and warrant application and identified the crimes being investigated and items to be seized, including "cell phones that could be used to facilitate the commission of the crimes." *Id.* at 4–5. The warrant also described the location to be searched (Russian's apartment), but it failed to authorize the search of cell phones already in law enforcement custody or the seizure of any

cell phone data. After obtaining the warrant, Deputy Wilson searched Russian's Samsung cell phones seized at the time of the arrest and recovered text messages, phone numbers, a phone log of calls sent and received, and photographs.

Russian was charged with four drug- and gun-related offenses. Count 1 charged possession of a Ruger 9mm firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). Count 2 was the same statutory violation, but predicated on possession of ammunition. Count 3 charged possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Count 4 alleged possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a). Before trial, Russian moved to suppress the evidence obtained from Deputy Wilson's search of the cell phones, arguing, among other things, that the warrant lacked particularity.

The district court denied the motion. Although the court found the particularity question was a close call, it upheld the search under the good faith exception to the exclusionary rule. Deputy Wilson had testified he believed he was authorized to search the phones, because the warrant mentioned cell phones in general, and because the application for the warrant requested authority to search both of the phones and provided a list of data to be seized. There was no evidence law enforcement had acted in bad faith, and the warrant was supported by probable cause. Thus, the court reasoned, suppressing the evidence would not serve the purposes of the exclusionary rule.

-4-

At trial, in addition to evidence obtained from the search of Russian's home and automobile, the government introduced text messages and photographs obtained from the cell phones seized at the time of Russian's arrest. The text messages established Russian knew one of the women who had called 911 when Russian threatened her; owned a gun; and was dealing in methamphetamine. The photographs, which were taken at Russian's home, depicted a green leafy substance resembling marijuana. The jury ultimately convicted Russian on all four counts as charged.

Before sentencing, the Presentence Report (PSR) calculated Russian's guidelines sentencing range. The PSR took into account a fifteen-year-old conviction for conspiracy to commit aggravated battery and arrived at a guidelines range of 46 to 57 months' imprisonment. The district court varied upward from that range and imposed a total sentence of 137 months' imprisonment: 76 months on Counts 1, 2, and 4, concurrent with each other and consecutive to a 60-month sentence on Count 3.

## II. Analysis

Russian makes three arguments on appeal. He contends the district court erred (1) in denying his motion to suppress evidence seized from a search of the cell phones; (2) in relying on an erroneously calculated guidelines range to impose 76-month sentences on Counts 1, 2, and 4; and (3) in imposing a sentence higher than the statutory maximum on Count 4. We consider each in turn.

## A. Unreasonable Search and Seizure

Russian first argues his convictions should be reversed, because the district court erred in denying his motion to suppress evidence seized from the two cell phones. Specifically, he contends the search warrant was invalid for lack of particularity and was so facially deficient that the good faith exception to the exclusionary rule cannot save the search. Although we agree with Russian that the warrant was invalid, we affirm his convictions because we conclude the good faith exception applies. And even if we were to assume the district court erred in denying Russian's motion, any error was harmless beyond a reasonable doubt.

The Fourth Amendment protects the right of citizens to be free from unreasonable searches and seizures. U.S. Const. amend. IV. In the criminal law context, evidence seized in violation of the Fourth Amendment may not be admitted against a defendant in a criminal prosecution, subject to certain exceptions. *See Mapp v. Ohio*, 367 U.S. 643, 648 (1961). But Fourth Amendment violations are still subject to the harmless error rule. *Chambers v. Maroney*, 399 U.S. 42, 53 (1970); *Chapman v. California*, 386 U.S. 18, 22 (1967) ("[T]here may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction."). For a constitutional error to be held harmless, "the court must

be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24.

We review de novo the district court's conclusion that even if the warrant was invalid for lack of particularity, the good faith exception to the exclusionary rule applies to save Deputy Wilson's search of Russian's cell phones. *See United States v. Burgess*, 576 F.3d 1078, 1087 (10th Cir.), *cert. denied* 558 U.S. 1087 (2009) ("The ultimate question of reasonableness under the Fourth Amendment is a legal conclusion that we review de novo."). In doing so, "[w]e consider the totality of the circumstances and view the evidence in the light most favorable to the government." *United States v. Riccardi*, 405 F.3d 852, 860 (10th Cir. 2005).

### 1. *Particularity Requirement*

Russian first argues the search warrant was invalid, because it failed to describe with particularity the place to be searched (the two Samsung cell phones) and the things to be seized (the cell phone data). We agree for several reasons.

In protecting against unreasonable searches and seizures, the Fourth Amendment mandates two requirements for search warrants: a warrant must be supported by probable cause, and it must describe with particularity "the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). Because the Fourth Amendment by its terms "requires particularity in the warrant, not in the supporting documents," an application for a warrant which meets the particularity requirement "does not

-7-

save the warrant from its facial invalidity." *Id.* (emphasis removed). And

"[a]lthough an executing officer's knowledge may be a curing factor," knowledge

alone is insufficient to satisfy the particularity requirement. *United States v.*

*Williamson*, 1 F.3d 1134, 1136 (10th Cir. 1993).

In the context of cell phones and cell phone data, the Supreme Court

recently held in *Riley v. California* that a warrant is generally required to search

digital information on a cell phone, even when the phone is seized incident to a

lawful arrest. 134 S. Ct. 2473, 2493 (2014). We have not yet had occasion to

address the effect of *Riley*, but we have previously recognized the importance of

the particularity requirement as it pertains to searches of personal computers,

because computers "can contain (or at least permit access to) our diaries,

calendars, files, and correspondence" and therefore may be "especially vulnerable

to a worrisome exploratory rummaging by the government." *United States v.*

*Christie*, 717 F.3d 1156, 1164 (10th Cir. 2013).

We have thus drawn a "recognizable line" in considering how much

particularity is required for computer searches. *Id.* On the one hand, we have

invalidated warrants authorizing computer searches "where we could discern no

limiting principle: where, for example, the warrant permitted a search of '"any

and all" information, data, devices, programs, and other materials,'" or "all

computer and non-computer equipment and written materials in [a defendant's]

house." *Id.* at 1164–65 (first quoting *United States v. Otero*, 563 F.3d 1127,

1132–33 (10th Cir. 2009); then quoting *Mink v. Knox*, 613 F.3d 995, 1011 (10th Cir. 2010)).  On the other hand, we have stated, "warrants may pass the particularity test if they limit their scope either 'to evidence of specific federal crimes or to specific types of material.'"  *Christie*, 717 F.3d at 1165 (quoting *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005) (alteration incorporated)).

This approach can be extended to searches of cell phones, which the Supreme Court has characterized as "minicomputers that also happen to have the capacity to be used as a telephone."  *See Riley*, 134 S. Ct. at 2489.  And here, we have little difficulty concluding the warrant on which Deputy Wilson relied to search Russian's phones was invalid for lack of particularity.[1]  Although the application requested authorization to search the two Samsung cell phones law

---

[1]  Russian also urges us to adopt a search methodology requirement for warrants involving cell phone data, meaning law enforcement would be required to specify an ex ante search protocol before a warrant could issue.  We need not reach this argument, because we can easily conclude this warrant failed particularity.  But we note that, like other circuits, we have previously declined to require a search protocol for computer searches, since courts are better able to assess the reasonableness of search protocols ex post, "in light of the totality of the circumstances" and "where evidence and experts from both sides can be entertained and examined."  *See Christie*, 717 F.3d at 1166–67; *see also United States v. Richards*, 659 F.3d 527, 538 (6th Cir. 2011); *United States v. Cartier*, 543 F.3d 442, 447–48 (8th Cir. 2008).  And, in the context of computer searches at least, a leading Fourth Amendment scholar has opined that Supreme Court precedent "point[s] to the conclusion that the Fourth Amendment does not permit ex ante restrictions on the execution of computer warrants."  Orin S. Kerr, *Ex Ante Regulation of Computer Search and Seizure*, 96 Va. L. Rev. 1241, 1260–71 (2010).

enforcement had seized at the time of Russian's arrest and certain data that might be found on them, the warrant itself merely authorized a search of Russian's residence and seizure of any cell phones found inside. The warrant did not identify either of the phones that were already in law enforcement's custody, nor did it specify what material (e.g., text messages, photos, or call logs) law enforcement was authorized to seize.

Accordingly, we agree with Russian that the warrant failed to meet the Fourth Amendment's particularity requirement.

### 2. Good Faith Exception to the Exclusionary Rule

Although the warrant was invalid, we can also consider whether the good faith exception to the exclusionary rule applies. Russian contends it does not, arguing the warrant was so facially deficient that Deputy Wilson could not reasonably have presumed it to be valid. We disagree, because we find Deputy Wilson's reliance on the warrant was objectively reasonable under the circumstances.

Even if a warrant fails to satisfy the Fourth Amendment's particularity requirement, the exclusionary rule should not be applied to suppress evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate judge that is ultimately deemed invalid. *United States v. Leon*, 468 U.S. 897, 922 (1984). The rationale for *Leon*'s good faith exception is the underlying purpose of the exclusionary

-10-

rule—namely, to deter police misconduct. When an officer acts in good faith, there is nothing to deter. *Id.* at 918. Thus, "the suppression of evidence obtained pursuant to a warrant should be ordered only in the unusual cases in which exclusion will further the purposes of the exclusionary rule." *Riccardi*, 405 F.3d at 863.

But the officer's reliance on the defective warrant still must be objectively reasonable: the government is not entitled to the good faith exception when a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 922–23. "The test is an objective one that asks 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Otero*, 563 F.3d at 1134 (quoting *Leon*, 468 U.S. at 922 n.23). "Not every deficient warrant, however, will be so deficient that an officer would lack an objectively reasonable basis for relying upon it." *Otero*, 563 F.3d at 1134. "Even if the court finds the warrant to be facially invalid . . . it 'must also review the text of the warrant and the circumstances of the search to ascertain whether the agents might have reasonably presumed it to be valid.'" *Riccardi*, 405 F.3d at 683 (quoting *United States v. Leary*, 846 F.2d 592, 607 (10th Cir. 1988)).

Here, several factors lead us to conclude Deputy Wilson's reliance on the warrant was objectively reasonable. First, Deputy Wilson prepared the warrant

application and supporting affidavit, in which he carefully identified each Samsung cell phone by color and model number and specified which types of data he had probable cause to believe would be found therein.  Although a warrant application or affidavit cannot save a warrant from facial invalidity, it can support a finding of good faith, particularly where, as here, the officer who prepared the application or affidavit also executed the search.  *See United States v. Simpson*, 152 F.3d 1241, 1248 (10th Cir. 1998) ("[T]he affidavit certainly supports the district court's conclusion that Deputy Johnson [the affiant] in good faith believed he was obtaining a warrant to search Simpson's residence as well as his person."); *see also United States v. Tracey*, 597 F.3d 140, 153 (3d Cir. 2010) ("We also note that the application of the good faith exception is appropriate because [Officer] Holler, who drafted the narrower affidavit and was aware of its limits, led the search team at Tracey's home.").

Second, in addition to signing the warrant itself, the magistrate judge signed Deputy Wilson's warrant application and affidavit, which contained a particularized description of the Samsung cell phones and cell phone data.  The magistrate judge's approval of the application and affidavit—and reference to both documents in the first paragraph of the warrant—further supports the objective reasonableness of Deputy Wilson's reliance on the warrant.  *Cf. United States v. Allen*, 625 F.3d 830, 839 (5th Cir. 2010) (reasoning "the executing officer who prepared the warrant, the affidavit and the attachment . . . had

-12-

additional objective reason to believe the warrant was valid," because the magistrate judge "signed not only the warrant, but also the affidavit, to which the list of items to be seized was attached"). Courts applying the good faith exception "have concluded that, at least when the magistrate neither intimates he has made any changes in the warrant nor engages in conduct making it appear he has made such changes, the affiant-officer is entitled to assume that what the magistrate approved is precisely what he requested." 1 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 1.3(f) (5th ed. 2012). Thus, it was reasonable for Deputy Wilson to rely on the warrant to search the cell phones already in law enforcement's custody and seize certain cell phone data related to the crimes listed in the warrant.

Third, Deputy Wilson confined his search to the evidence specified in the warrant application and affidavit, further indicating he acted in good faith and in objectively reasonable reliance on what he believed was a valid warrant. *Cf. Otero*, 563 F.3d at 1136 ("The inspectors in this case had reason to believe the warrant was valid, considered themselves authorized to search only for evidence of crimes for which they had probable cause, and conducted their search accordingly."); *Riccardi*, 405 F.3d at 864 ("The officers remained within the terms of the warrant as well as the affidavit, and did not conduct a 'fishing expedition' beyond the scope of the authorized investigation.").

Finally, excluding the challenged evidence would not serve the underlying purpose of the exclusionary rule. As the Supreme Court has emphasized, "the exclusionary rule is not an individual right," *Herring v. United States*, 555 U.S. 135, 141 (2009), but rather "a judicially fashioned remedy whose focus is not on restoring the victim to his rightful position but on deterring police officers from knowingly violating the Constitution," *Allen*, 625 F.3d at 836; *see also Otero*, 563 F.3d at 1133. As detailed above, "[a]t each step of the investigation," Deputy Wilson "made every effort to comply with the law." *See Burgess*, 576 F.3d at 1091. "[T]he exclusionary rule is designed to deter *police* misconduct rather than to punish the errors of judges and magistrates." *Leon*, 468 U.S. at 916 (emphasis added). And since judges and magistrates are "neutral judicial officers" with "no stake in the outcome of particular criminal prosecutions," the exclusionary sanction "cannot be expected significantly to deter them." *Id.* at 917. Accordingly, given the lack of misconduct by law enforcement and Deputy Wilson's reliance on a warrant he reasonably believed to be valid, we decline to apply the exclusionary rule to the evidence seized from Russian's phones.

None of Russian's arguments persuade us to reach a different conclusion. First, Russian contends Deputy Wilson's subjective knowledge of the place to be searched does not render his reliance on the deficient warrant objectively reasonable. But as we have already explained, a number of other factors demonstrate the objective reasonableness of Deputy Wilson's belief the warrant

-14-

was valid.  Russian next argues that because Deputy Wilson specifically requested a search of cell phone data, he should have known the warrant did not authorize such a search when it referred only to "cell phones that could be used to facilitate the commission of the crimes."  R. Supp. Vol. II at 4–5.  Russian claims no reasonable officer would read this brief reference to cell phones as permitting a search of the phones in law enforcement's custody or their data.  But this argument also fails in light of the circumstances, including the magistrate judge's signature on the warrant application and affidavit.

In sum, the district court did not err in applying the good faith exception to uphold the search of Russian's cell phones.

### 3. Harmless Error Rule

But even if we were to assume the district court erred in denying Russian's motion to suppress and the good faith exception did not save the warrant, we would still find any error was harmless beyond a reasonable doubt.

Most constitutional errors, including Fourth Amendment violations, do not require reversal of a conviction if the court concludes the error was harmless beyond a reasonable doubt.  *Chambers*, 399 U.S. at 52–53.  The government bears the burden of making this showing.  *United States v. Miller*, 111 F.3d 747, 751 (10th Cir. 1997).  "In cases that are decided by a jury, a court will only find a constitutional error harmless if the court can conclude 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'"  *United*

-15-

*States v. Benard*, 680 F.3d 1206, 1213 (10th Cir. 2012) (quoting *Chapman*, 386 U.S. at 24). Put differently, we must determine "whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) (emphasis in original). In making this determination, we consider the alleged error "in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *United States v. Mullikin*, 758 F.3d 1209, 1211 (10th Cir. 2014) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 308 (1991)).

Russian contends any error was not harmless beyond a reasonable doubt, because the evidence obtained from the cell phones, which included photographs of a substance resembling marijuana and text messages containing offensive and violent language, "was damning and inflammatory, and was woven throughout the trial." Aplt. Rep. Br. at 13. Russian is correct that the prejudicial effect of potentially wrongfully admitted evidence is one consideration in the harmless error analysis. *See United States v. Glass*, 128 F.3d 1398, 1403 (10th Cir. 1997). But we still must consider the challenged evidence in the context of the evidence properly admitted at trial. *See Mullikin*, 758 F.3d at 1211. And, after reviewing the unchallenged evidence introduced at trial during the government's case in chief, we conclude the government has met its burden of demonstrating any error in admitting the evidence obtained from the search of Russian's two cell phones was harmless.

To begin, the jury's guilty verdict on Counts 1 and 2 was surely not attributable to the evidence seized from the cell phones. Counts 1 and 2, unlawful possession of a firearm or ammunition in or affecting interstate commerce, required the government to prove beyond a reasonable doubt that Russian had been convicted of a felony and then knowingly possessed a firearm or ammunition that had moved in interstate commerce. In the superseding indictment, the government alleged Russian possessed a Ruger P95 9 mm handgun, along with eighty-two live cartridges of 9 mm ammunition and eighteen live cartridges of 20-gauge shotgun ammunition, which had been transported in interstate commerce. At trial, Deputy Wilson testified that during the lawful search of Russian's residence, law enforcement discovered a Ruger P95 9 mm handgun, loaded with twelve rounds of ammunition, in the kitchen. Two loaded 9 mm magazines and additional 9 mm ammunition, along with a box of shotgun shells, were discovered on Russian's dresser. In light of this evidence, the admission of the cell phone evidence, if erroneous, was harmless beyond a reasonable doubt regarding the guilty verdicts on Counts 1 and 2.

The same is true for Count 4, possession with intent to distribute marijuana, which required the government to prove beyond a reasonable doubt that Russian knowingly or intentionally possessed marijuana with the intent to distribute it. During the lawful search of Russian's residence, officers recovered a wealth of physical evidence that was admitted at trial, including forty-six plastic baggies

containing marijuana, with a name, address, phone number, and "This 1's on me" written on each baggie. R. Vol. III at 177–80. The baggies also contained a half book of matches and rolling papers. Additionally, officers found nine identically marked baggies, which contained marijuana, matchbooks, and rolling papers, in Russian's abandoned vehicle on the night of his arrest. Digital scales were discovered in Russian's bathroom and in his kitchen. And a ledger with entries concerning distribution of a controlled substance was discovered on Russian's dresser. Officers also found $23,700 in cash, most of which was hidden inside an air vent in Russian's residence.

In addition to this unchallenged physical evidence, a witness whose name appeared on the baggies testified at trial that he had never seen the plastic baggies of marijuana found in Russian's vehicle and residence, he did not spell his name as it was spelled on the baggies, he was unfamiliar with the address listed on the baggies, and his handwriting was not on the baggies. He also testified that he had previously been convicted on a misdemeanor involving marijuana. And one of the women involved in the 911 call testified about the events leading up to that 911 call, which led to Russian's arrest. Pertinently, she testified Russian had given her some methamphetamine to sell, accused her of stealing it, and eventually threatened her with a machete and a handgun.

All of this unchallenged evidence and trial testimony establishes that, even if the text messages and photographs were admitted in error, the jury's guilty

verdict on Count 4 was not attributable to the cell phone evidence. There was overwhelming evidence Russian knowingly or intentionally possessed marijuana with the intent to distribute it, and the strength of this evidence minimizes any prejudice Russian may have suffered as a result of the cell phone evidence. *Cf. Glass*, 128 F.3d at 1403 ("To hold an error of constitutional dimension harmless, we must conclude 'the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the [purported error] is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error.'") (quoting *Schneble v. Florida*, 405 U.S. 427, 430 (1972)).

Finally, and for similar reasons, any error was also harmless regarding Count 3. For Count 3, the government was required to prove beyond a reasonable doubt that Russian knowingly possessed a firearm in furtherance of a drug-trafficking crime. Specifically, the government had to prove Russian "committed the crime of possession with intent to distribute marijuana, as charged in Count 4" and that he "possessed a firearm in furtherance of this crime." R. Vol. III at 378–79. As the court instructed the jury, "in furtherance of" means "for the purpose of assisting in, promoting, accomplishing, advancing, or achieving the goal or objective of the underlying offense." *Id.* at 379. The mere presence of a firearm at the scene of a drug-trafficking crime is insufficient to meet this element. Instead, the following non-exhaustive factors can indicate a firearm was

possessed in furtherance of a drug-trafficking crime: "(1) the type of criminal activity that is being conducted; (2) accessibility of the firearm; (3) the type of firearm; (4) whether the firearm is stolen; (5) the status of the possession (legitimate or illegal); (6) whether the firearm is loaded; (7) the time and circumstances under which the firearm is found, and (8) proximity to drugs or drug profits." *Id.*

As detailed above, evidence lawfully obtained and admitted at trial established Russian illegally possessed a loaded 9 mm handgun, and this handgun was located on his kitchen cabinet, just above the largest source of marijuana found in Russian's residence—that is, the forty-six baggies found in the space below the kitchen sink. A large amount of cash was also discovered in Russian's residence. And there was overwhelming evidence supporting Russian's conviction on Count 4, as discussed above. All of this evidence reduces the possible prejudicial effect of the cell phone evidence, and it establishes the jury's guilty verdict on Count 3 was not attributable to evidence that may have been erroneously admitted.

In sum, the lawfully obtained and admitted evidence and trial testimony elicited by the government on each count charged and the comparative lack of prejudicial effect of the evidence obtained from the cell phones lead us to conclude the jury's guilty verdicts on all counts were not attributable to the admission of the evidence seized during the search of Russian's cell phones.

Thus, even if the district court erred in denying Russian's motion to suppress, any error was harmless beyond a reasonable doubt.

We therefore affirm Russian's convictions.

### B. Improperly Calculated Guidelines Range

Russian next argues the district court plainly erred in relying on an improperly calculated guidelines range for the sentences imposed on Counts 1, 2, and 4. Specifically, he contends the PSR relied on a fifteen-year-old felony conviction that was too old to score in calculating a guidelines range of 46 to 57 months, from which the district court varied upwards to impose a 76-month sentence on Counts 1, 2, and 4. Properly calculated, the range would have been 24 to 30 months. The government does not dispute this issue, and thus we remand for resentencing on Counts 1, 2, and 4.

### C. Sentence Above Statutory Maximum

Finally, Russian argues the district court plainly erred in imposing a 76-month sentence on Count 4, since the statutory maximum for that offense is 60 months. Again, the government does not dispute the issue. Accordingly, we remand for resentencing on Count 4 in accordance with the statutory maximum.

## III. Conclusion

For the foregoing reasons, we AFFIRM Russian's convictions but REMAND for resentencing on Counts 1, 2, and 4.