The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
March 26, 2020

## 2020COA46

**No. 16CA1319, *People v. Pettigrew* — Constitutional Law —
Fourth Amendment — Searches and Seizures — Exclusionary
Rule — Independent Source Exception**

A division of the court of appeals considers what identifying

information must be included in a search warrant authorizing the

search of a cell phone to meet the Fourth Amendment's

particularity requirement. The division concludes that the search

warrant in this case — identifying one phone that was registered to

a known phone number and that belonged to a known person —

was sufficiently particular under the Fourth Amendment.

COLORADO COURT OF APPEALS  **2020COA46**

---

Court of Appeals No. 16CA1319
Adams County District Court No. 14CR234
Honorable Francis C. Wasserman, Judge
Honorable Donald S. Quick, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

William Scott Pettigrew,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE BERGER
Fox and Lipinsky, JJ., concur

Announced March 26, 2020

---

Philip J. Weiser, Attorney General, Megan C. Rasband, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Casey J. Mulligan, Alternate Defense Counsel, Boulder, Colorado, for Defendant-Appellant

¶ 1     William Scott Pettigrew appeals his convictions for pandering of a child and tampering with a witness or victim.  He contends that two errors require reversal of his convictions.  First, he claims that the trial court's statements made to the jury during voir dire regarding reasonable doubt lowered the prosecution's burden of proof.  Second, he asserts that evidence of the contents of his cell phone was admitted in violation of the Fourth Amendment.  This second claim raises a question of first impression in Colorado: What identifying information must be included in a search warrant authorizing the search of a cell phone to meet the Fourth Amendment's particularity requirement?

¶ 2     We conclude that none the statements made by the trial court lowered the prosecution's burden of proof.  We also conclude that the independent source exception to the Fourth Amendment exclusionary rule applied to the evidence found in Pettigrew's phone and that the search warrant sufficiently identified the phone to be searched.  Thus, we affirm the judgment.

## I.     Background

¶ 3     Pettigrew met the seventeen-year-old victim in 2013.  After interacting in person, over the phone, and by text, they began a

1

relationship.  Text messages that Pettigrew sent to the victim supported the prosecution's theory that Pettigrew encouraged the victim to become a prostitute.  The victim's mother contacted the police after seeing sexually explicit photographs on the victim's phone.

¶ 4     After obtaining information from the victim, her cell phone, and her mother, the police arrested Pettigrew inside his house without a warrant.

¶ 5     The police interrogated Pettigrew after they transported him to the police station.[1]  During the interrogation, Pettigrew showed the police certain text messages on his cell phone.  The police already had possession of the phone; they had seized it after arresting Pettigrew.  Later that day, the police released Pettigrew because of concerns by the arresting officers' superiors that the arrest might have been unlawful because it was effected without a warrant.  Although the police released Pettigrew, they kept his phone.

¶ 6     The next day, on the detective's application, a magistrate issued a warrant for Pettigrew's arrest, and he was rearrested.

_____

[1] Pettigrew does not raise any Fifth Amendment challenges on appeal.

2

Approximately a week later, the magistrate issued a search warrant for the cell phone, which, as noted, had remained in police custody.

¶ 7 Pettigrew was charged with soliciting for child prostitution, pandering of a child, sexual exploitation of a child, attempted inducement of child prostitution, and tampering with a witness or victim.

¶ 8 Pettigrew moved to suppress all of the information obtained from his cell phone. He argued that the officers unlawfully arrested him when they entered his home without a warrant and that the seizure and later forensic examination of his cell phone were fruits of the unlawful arrest. The trial court denied the motion, concluding that exigent circumstances justified Pettigrew's arrest.

¶ 9 The jury convicted Pettigrew of pandering of a child and tampering with a witness or victim but acquitted him of the other charges.

¶ 10 On appeal, in an unpublished remand order, a different division of this court rejected the trial court's conclusion that exigent circumstances justified Pettigrew's warrantless arrest. *People v. Pettigrew*, (Colo. App. No. 16CA1319, Feb. 27, 2019) (unpublished order). That division remanded to the trial court to

determine whether the independent source exception to the exclusionary rule justified the admission of the evidence found on the phone.[2]

¶ 11    The prior division identified two questions that governed whether the independent source doctrine applied. First, was the decision to seek the search warrant prompted by information learned as a result of the unlawful arrest? Second, did any information gained from the illegal search affect the magistrate's decision to issue the search warrant? The division answered the second question in the negative. To do so, the division redacted from the warrant affidavit all of the information that it believed was discovered as a result of the unlawful arrest, and then concluded that the warrant affidavit still established probable cause for the issuance of the warrant. As to the first question, because issues of

_____

[2] Neither the prior division nor the trial court determined whether the police searched Pettigrew's phone, within the meaning of the Fourth Amendment, when he showed the police certain text messages during custodial questioning. Even if a consensual search occurred, it remains true that the arrest was unlawful and the examination of the phone by the police, consensual or not, flowed directly from the unlawful arrest. Similarly, neither the prior division nor the trial court evaluated whether the seizure of the phone, as opposed to Pettigrew's warrantless arrest, was justified by exigent circumstances. Because of our disposition, neither do we.

4

fact remained, the division remanded the case to the trial court to determine if the information obtained from the search of the phone before the warrant was issued affected the *detective's* decision to seek the search warrant.

¶ 12     On remand, the trial court (with a different judge presiding) found that the detective's decision to seek the search warrant was not prompted or impacted by the evidence gathered as a result of the illegal arrest.  The court therefore concluded that the evidence was admissible under the independent source exception.  The appeal was then recertified to this court.

## II.    Analysis

### A.    The Trial Court's Statements and Instructions on Reasonable Doubt

¶ 13     Pettigrew asserts that five statements made by the trial court to the jury during voir dire constituted reversible error.[3]  Pettigrew did not preserve any of these claims of error.

¶ 14     A jury "instruction that lowers the prosecution's burden of proof below reasonable doubt constitutes structural error and requires automatic reversal." *Johnson v. People*, 2019 CO 17, ¶ 8.

---

[3] The prior division did not address the voir dire claims.

5

But not every statement made by a trial court to a jury constitutes an instruction. *See Deleon v. People*, 2019 CO 85, ¶ 15; *People v. Knobee*, 2020 COA 7, ¶¶ 72-76 (Dailey, J., concurring in part and dissenting in part). Thus, if we determine that the court made an improper statement that lowered the burden of proof during voir dire, we must then determine if it constituted an instruction. If so, reversal is required. *Johnson*, ¶ 8.

¶ 15    However, if the statements were not instructions, we evaluate under the plain error standard because Pettigrew did not preserve these claims. *See Cardman v. People*, 2019 CO 73, ¶ 18; *Knobee*, ¶¶ 72-76 (Dailey, J., concurring in part and dissenting in part). "[P]lain error occurs when there is (1) an error, (2) that is obvious, and (3) that so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Cardman*, ¶ 19.

### 1.    "Innocent" and "Not Guilty"

¶ 16    During voir dire, the court told prospective jurors:

> Innocent would mean that the defendant didn't
> do anything, all right? He was in China at the
> time of this event okay? He just – he's
> innocent, all right? But that's not how we look
> at trials in this country. It's – trials in this

country are a test of the prosecution's evidence. So even if you listen to the evidence and you start to think about it, you say, well, you know, he might have done it, or he could have done it, there's some evidence there that would suggest he's involved in this, if it doesn't convince you beyond a reasonable doubt, then you have to find him not guilty.

¶ 17    These statements did not lower the prosecution's burden of proof, so we need not determine if they were instructions. Nothing in the court's statements directed or even suggested that the jury could convict Pettigrew on anything less than proof beyond a reasonable doubt. Despite any possible confusion, the court correctly informed prospective jurors that they had to find Pettigrew not guilty if they were not convinced of his guilt beyond a reasonable doubt. And immediately prior to the quoted statements, the court correctly told the jury that guilty "means that the prosecution's evidence has convinced you beyond a reasonable doubt that the defendant committed one or all of the offenses charged."

¶ 18    Also, it is uncontested that the jury was correctly instructed on the burden of proof, under the pattern jury instructions. Pettigrew does not contend that those instructions were defective in

any way.  Courts have repeatedly recognized that the risk of lowering the burden of proof is mitigated when the jury is otherwise correctly instructed.  *People v. Estes*, 2012 COA 41, ¶ 12.

### 2.    "Beyond a Shadow of a Doubt"

¶ 19    Next, the trial court explained to the venire that legal concepts are not the same as they appear on television:

> [B]eyond a shadow of doubt.  Sounds really good, doesn't it?  There's no such thing.  In law, there is no such thing as a burden of proof beyond a shadow of doubt.  There's no proof beyond all doubt, every doubt or any doubt.  And that's because, as [prospective juror] pointed out, you can have vague, speculative or imaginary doubts about all kinds of things, but they aren't reasonable, okay?
>
> So we don't – the burden is not an impossible burden on the prosecution, but it's a very, very high burden.

¶ 20    There is no need to determine whether these statements constituted instructions because they did not misstate the law or lower the prosecution's burden of proof.  It is not reversible error for a court to distinguish the fictional "beyond a shadow of a doubt" standard from the constitutionally mandated beyond a reasonable doubt standard.  *Knobee*, ¶ 37.

### 3. Perry Mason and CSI

¶ 21    After crediting the television show "Perry Mason" for the popularity and origin of the "beyond a shadow of a doubt" phrase, the court summarized an episode of the show "CSI" and made the following comments:

> And the reason I emphasize that is because, you know, that's television. That's great for TV, but it's not real life, okay? And I am always concerned that when jurors go back into the jury room after they've heard all the evidence and they start to deliberate on a case and somebody says, well, you know, I saw on television where the police were able to do this. And that's not – that's bad, okay? Because this isn't television. This is real life, all right? And we don't rely on what we saw on TV to decide cases in a live courtroom.

¶ 22    These statements, whether instructions or not, did not affect the prosecution's burden of proof. They accurately informed the prospective jurors that they were required to apply the law given to them by the court, not by television shows.

### 4. Birthday Hypothetical

¶ 23    The court continued its attempt to explain reasonable doubt to potential jurors:

> THE COURT: I can throw out maybe your birth certificate is wrong, maybe your mother wasn't

aware of the date. But I would suggest to you, [prospective juror], on November 18, you are going to recognize that as your birthday, aren't you?

PROSPECTIVE JUROR: Yes, sir.

THE COURT: Because I haven't created a reasonable doubt, have I?

THE PROSPECTIVE JUROR: No, sir.

THE COURT: That's the important thing. It's not to remove all doubt, every doubt, every vague or imaginative doubt. The burden is on the prosecution to remove all reasonable doubt.

¶ 24   Even if portions of these statements were potentially confusing, they did not lower the burden of proof because the last quoted sentence was a correct statement of the law: it is the prosecution's burden to prove the defendant's guilt beyond a reasonable doubt.

5.   "We Try People When There's Evidence to Support the Charges"

¶ 25   During voir dire, the court had the following colloquy with a prospective juror:

PROSPECTIVE JUROR: I'm wondering why there's no child pornography charges.

THE COURT: Well, you will just have to listen. Maybe there's not enough evidence to charge

10

> him with that.  I don't know what the evidence
> is going to be.
>
> . . . .
>
> THE COURT: I understand.  But, first of all,
> you know, we try people when there's evidence
> to support the charges, okay?
>
> THE PROSPECTIVE JUROR: Right.
>
> THE COURT: You know, and right now he's
> presumed innocent because there's no
> evidence against him, so I can't speak to why
> he's not being charged with other offenses.

¶ 26    This colloquy is more problematic than the preceding statements because the court aligned itself with the prosecutor by using the pronoun "we." *Estes*, ¶ 10.  The court also improperly implied that there was at least some evidence to support the charges against Pettigrew when it said that "we try people when there's evidence to support the charges." *See id.*

¶ 27    But any improper inferences as to Pettigrew's guilt were corrected by the court's last statement — "right now he's presumed innocent because there's no evidence against him."  Even if these statements were instructions, they must be analyzed in context, not isolation.  *Johnson*, ¶ 14.  And accurate written instructions on reasonable doubt and the presumption of innocence mitigated the

11

potential for any misunderstanding. *Estes*, ¶ 12. Thus, these statements did not lower the prosecution's burden of proof.

¶ 28 Our conclusion that none of the trial court's statements require reversal does not constitute approval of them. Indeed, this court, the Colorado Supreme Court, and the United States Supreme Court have repeatedly disapproved of similar voir dire statements made by trial courts because they jeopardize otherwise valid convictions and almost never bring additional clarity to the difficult concept of reasonable doubt. *See People v. Vialpando*, 2020 COA 42, ¶¶ 85–87 (collecting cases).

### B. Independent Source Exception

¶ 29 Pettigrew next contends that the trial court on remand erred when it found that the independent source exception to the exclusionary rule authorized admission of the evidence obtained from his cell phone.

### 1. The Law

¶ 30 The United States and Colorado Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Colo. Const. art. II, § 7.

¶ 31    "[E]vidence derived from or acquired by the police through unlawful means, such as an illegal search, is inadmissible in criminal prosecutions" under the fruit of the poisonous tree doctrine. *People v. Triplett*, 2016 COA 87, ¶ 55; *see also Wong Sun v. United States*, 371 U.S. 471, 484 (1963). Even so, illegally seized evidence may be admissible if an exception to the exclusionary rule applies.

¶ 32    One exception is the independent source rule, which permits "the unconstitutionally obtained evidence [to] be admitted if the prosecution can establish that it was also discovered by means independent of the illegality." *People v. Nelson*, 2012 COA 37, ¶ 54 (quoting *People v. Schoondermark*, 759 P.2d 715, 718 (Colo. 1988)). The prosecution bears the burden of proving by a preponderance of the evidence that the independent source exception applies. *Id.* at ¶ 55.

¶ 33    This exception raises two questions. First, was the decision to seek the search warrant prompted by evidence obtained during the initial illegal arrest? *Schoondermark*, 759 P.2d at 719. Second, did any information gained from the illegal arrest affect the magistrate's

decision to issue the search warrant? *People v. George*, 2017 COA 75, ¶ 47.

¶ 34    A warrant must be supported by probable cause, and it must describe with particularity "the place to be searched, and *the persons or things to be seized.*" *Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (quoting U.S. Const. amend. IV). "The requirement that warrants shall particularly describe the things to be seized . . . prevents the seizure of one thing under a warrant describing another." *Marron v. United States*, 275 U.S. 192, 196 (1927).

¶ 35    A trial court's ruling on a motion to suppress presents a mixed question of fact and law. *People v. Hyde*, 2017 CO 24, ¶ 9. "We defer to the trial court's findings of fact that are supported by the record, but we assess the legal effect of those facts de novo." *Id.*

## 2.    Decision to Seek the Warrant

¶ 36    Pettigrew argues that the trial court erred on remand in concluding that the police's decision to obtain a search warrant was not tainted by any of the illegally obtained information. Specifically, he argues that the detective's testimony indicated that his decision to seek the warrant was tainted by information obtained from the

14

illegal arrest and seizure of the phone.  But the record supports the trial court's findings and conclusion.

¶ 37     The record demonstrates that the police knew that Pettigrew was texting the victim about child prostitution before the unlawful arrest and seizure of Pettigrew's phone.  Before the police ever contacted or arrested Pettigrew, they knew it was highly likely that Pettigrew's phone contained evidence of criminal conduct because the detective had examined the victim's phone, which contained text messages between her and Pettigrew.  This was more than sufficient probable cause to believe that Pettigrew had engaged in criminal conduct, completely independent of information obtained from the unlawful arrest.

¶ 38     Pettigrew also argues that the detective only learned the physical description of the cell phone during Pettigrew's interrogation following his unlawful arrest, and that this information influenced the detective's decision to seek a warrant.

¶ 39     On these facts, this argument is meritless.  The detective knew to a practical certainty that Pettigrew had a phone that he was using to text a minor about illegal activity.  Because the police knew this before the illegal arrest and interrogation, whatever information

15

they learned from the interrogation did not influence their decision to obtain a search warrant.

### 3. Validity of the Warrant

¶ 40 Pettigrew's argument about the physical description of the phone has more force when analyzing whether the *magistrate's* decision to issue the warrant was affected by illegally obtained information. Pettigrew argues that if the phone's physical description was redacted from the warrant affidavit, the magistrate would not have issued the warrant because it would have lacked particularity as to the place to be searched — the phone.[4] This is so, according to Pettigrew, because a physical description of the phone is necessary to satisfy the Fourth Amendment's particularity requirement.

¶ 41 This issue is outside the scope of the limited remand order, which concerned only the question of whether the *detective's* decision to seek the warrant was tainted by the illegal search. The

---

[4] Pettigrew does not argue that the warrant was deficient for lack of particularity as to the *things to be seized* within the phone (for example, files, data, or other information on the phone).

prior division has already determined that the *magistrate's* decision to issue the warrant was not tainted.

¶ 42     So, we face two questions.  First, should the prior division have redacted the physical description of Pettigrew's cell phone in addition to the other information obtained from the unlawful arrest and seizure before determining whether the magistrate's decision to issue the warrant was impacted?  Second, if the physical description of the phone is redacted from the warrant, is it invalid for lack of particularity?  We answer the second question "no," so it is not necessary to consider the first.

¶ 43     Even if the physical description of the phone is redacted, the warrant sufficiently describes the "place" to be searched — Pettigrew's phone.  Specifically, the warrant authorized the search of Pettigrew's cell phone that was tied to one specific phone number.  This is sufficient particularity under the Fourth Amendment.

¶ 44     We have found no authority supporting Pettigrew's contention that a warrant to search a cell phone must describe the phone's make, model, and color to meet the Fourth Amendment's particularity requirement.  Pettigrew relies on *United States v.*

17

*Russian*, 848 F.3d 1239, 1246 (10th Cir. 2017), but that case is different. There, the warrant authorized the search of the defendant's apartment and *any* cell phones found inside. *Id.* The United States Court of Appeals for the Tenth Circuit held that the warrant was invalid for lack of particularity.[5] *Id.*

¶ 45     This case — where the police wanted to search one phone, belonging to a known person, registered to a known phone number — is fundamentally different from *Russian*. Here, the police did not seek a warrant for *any* electronic device that Pettigrew could have been using to communicate with the victim; they sought a warrant for one cell phone used by Pettigrew that already was in the police's possession. One federal court has concluded that a warrant that

---

[5] It is unclear whether the warrant in *Russian* lacked particularity because it authorized the search of *any* cell phones found in the defendant's apartment, or because that authorization failed to describe the two phones that the police had already seized, or both. *See United States v. Russian*, 848 F.3d 1239, 1246 (10th Cir. 2017) ("Although the application requested authorization to search the two Samsung cell phones law enforcement had seized at the time of Russian's arrest and certain data that might be found on them, the warrant itself merely authorized a search of Russian's residence and seizure of any cell phones found inside."). Regardless, *Russian* does not support Pettigrew's contention that a warrant to search a cell phone must describe the phone's make, model, and color to be sufficiently particular.

"expressly identified [a] cell phone number associated with an active" criminal investigation has "sufficiently identified the cell phone" for Fourth Amendment purposes. *United States v. Cook*, No. CRIM. 14-221 ADM/JJK, 2015 WL 224721, at *11 (D. Minn. Jan. 15, 2015), *aff'd*, 842 F.3d 597 (8th Cir. 2016). While that case is not binding on us, it is well reasoned, and we follow it here.

¶ 46  For all these reasons, the evidence seized from Pettigrew's phone was admissible at trial under the independent source exception.

### III.  Conclusion

¶ 47  The judgment of conviction is affirmed.

JUDGE FOX and JUDGE LIPINSKY concur.