FILED
United States Court of Appeals
Tenth Circuit

December 21, 2021

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

——————————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RAMAR TRAVELLE PALMS, a/k/a
Reddy,

    Defendant - Appellant.

No. 20-5072

——————————————————

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 4:19-CR-00103-CVE-1)**

——————————————————

Blain Myhre, Blain Myhre LLC, Englewood, Colorado, for the Defendant – Appellant.

Thomas E. Duncombe, Assistant United States Attorney (Clinton J. Johnson, Acting United States Attorney, with him on the brief), Northern District of Oklahoma, Tulsa, Oklahoma, for Plaintiff – Appellee.

——————————————————

Before **McHUGH**, **EBEL**, and **EID**, Circuit Judges.

——————————————————

**McHUGH**, Circuit Judge.

——————————————————

The Government tried Appellant Ramar Palms before a jury in the Northern District of Oklahoma and obtained guilty verdicts on three crimes related to sex trafficking. On appeal, Mr. Palms asks this court to reverse his convictions and remand

for a new trial for two reasons. First, Mr. Palms argues the district court should have suppressed the evidence obtained from his cell phone because the warrant and the search of his cell phone violated the Fourth Amendment. Second, he argues the district court abused its discretion when it excluded sexual behavior evidence under Federal Rule of Evidence 412 because the exclusion violated the Fifth and Sixth Amendments.

As detailed below, we hold the warrant to search Mr. Palms's cell phone was sufficiently particular and the search was reasonable. We also hold the district court did not abuse its discretion in excluding sexual behavior evidence under Rule 412. Therefore, we affirm Mr. Palms's convictions.

## I.    BACKGROUND

### A.    *Factual History*

### 1.  Mr. Palms and M.W.[1]

In September 2018, Mr. Palms met M.W., a twenty-seven-year-old single mom, at a bar in Tulsa, Oklahoma. They began to spend time together and went on a few dates. Eventually, Mr. Palms invited M.W. to go on a road trip to Louisiana with him. On that road trip, Mr. Palms told M.W. he was a pimp and that he wanted her to make money for him. At the time, they were in the car together "in the middle of nowhere," and M.W. could not get away from Mr. Palms. ROA Vol. III at 1022. That night, they stopped at a

---

[1] The facts in this section come primarily from M.W.'s testimony at trial. Because Mr. Palms was tried and convicted, we view the evidence in the light most favorable to the Government. *Cf. United States v. Acosta-Gallardo*, 656 F.3d 1109, 1123 (10th Cir. 2011) (considering the evidence in the light most favorable to the government when reviewing the sufficiency of the evidence for a conviction).

hotel in Houston, Texas. There, Mr. Palms assaulted M.W. Then, he advertised M.W.'s services online and forced M.W. to go on her first "date." Mr. Palms taught M.W. about the pimping industry and told her she should keep her head down and not look any man in the eyes because another pimp might steal her from him.

When they returned to Tulsa, Mr. Palms began controlling every aspect of M.W.'s life. Mr. Palms required M.W. to quit her two jobs and work for him full-time as a prostitute. He constantly communicated with M.W. via text messages and phone calls and monitored her whereabouts. Mr. Palms also tracked who M.W. talked to and controlled her money, car, and phone. If M.W. did something or talked to a man he did not approve of, he would hit or strangle her.

Mr. Palms posted ads or required M.W. to post ads to various websites offering commercial sex acts from M.W. Mr. Palms created a template for her to follow to ensure she would attract clients. He required M.W. to post the ads regularly throughout the day and to go on at least four or five "dates" a day. Clients paid Mr. Palms by Cash App or paid M.W. in cash. In either case, Mr. Palms required M.W. to give him all the money she earned. Mr. Palms would occasionally buy M.W. food and other items, but M.W. had to ask him for money to support herself and her two children. M.W. could not cover her utility bills or rent, and eventually she was evicted.

## 2. Arrest

On November 20, 2018, Tulsa police officer Justin Oxford was investigating online advertisements for suspected prostitution. Officer Oxford responded to one of the ads and was directed to meet M.W. in room 220 at the Peoria Inn in Tulsa. When he

arrived, he saw Mr. Palms parked in a car near room 220. After M.W. let Officer Oxford

into the room, he asked for a sex act and put money on the nightstand. When M.W.

agreed, Officer Oxford identified himself as a police officer and arrested her. M.W. told

Officer Oxford that she was being forced to work as a prostitute and identified Mr. Palms

as her pimp. Officer Oxford also saw a text message from Mr. Palms on M.W.'s phone

screen. The police arrested Mr. Palms in the parking lot and seized his cell phone.

### 3.  Warrant and Search of Mr. Palms's Cell Phone

Officer Oxford sought a warrant to search Mr. Palms's cell phone from a Tulsa

County judge. In his affidavit supporting the warrant, Officer Oxford detailed the events

of November 20, 2018, and the information he obtained from M.W. about her connection

with Mr. Palms. The judge issued a warrant to search Mr. Palms's cell phone. The

warrant said "[p]robable cause ha[d] been shown" and authorized the police to search

Mr. Palms's cell phone for "[r]ecords, data, communications and information which are

evidence of Human Trafficking." ROA Vol. I at 68. Specifically, the warrant authorized

the police to search Mr. Palms's cell phone for evidence

> including, but not limited to, all digital evidence stored on removable
> storage and magnetic or electronic data contained in the contents of such
> tablet, cell phone, laptop, camera and/or memory cards, including electronic
> data storage devices, which in whole or part contain any and all evidence
> related to the subscriber information from the SIM (subscriber
> identification module) and/or ownership information for the device,
> electronic mail, call logs, contacts, calendars, location services information,
> global positioning (GPS) data and information, internet chat
> communications, browser cache, auto-complete forms, stored passwords,
> instant messaging, SMS (short message service), MMS (multimedia
> message service), social media account data and information, application
> data and information, documents, photographs, images, graphics, pictures,
> videos, movies, audio or video recordings, any associated metadata, and

4

any recorded documents depicting communications, correspondence or storage of these communications, files, graphics, documents, or other data related to the crime of Human Trafficking.

*Id.*

Officer Brian Booth, a member of the Tulsa Police Department's intelligence unit, extracted all the data from Mr. Palms's cell phone pursuant to the warrant. Officer Booth gave the extracted information, excluding the cloud data,[2] to Officer Oxford, who searched it.

### B.    *Procedural History*

In July 2019, a federal grand jury charged Mr. Palms with sex trafficking by force, fraud, and coercion in violation of 18 U.S.C. §§ 1591(a)(1), (a)(2), and (b)(1) (Count One); attempted obstruction of sex trafficking enforcement in violation of 18 U.S.C. § 1591(d) (Count Two); and retaliation against a victim and causing bodily harm in violation 18 U.S.C. § 1513(b)(2) (Count Three).

### 1.  Motion to Suppress

Prior to trial, Mr. Palms submitted a motion arguing the evidence obtained from his cell phone should be suppressed because the warrant and the search of his cell phone violated the Fourth Amendment. He made four arguments in support: (1) the document

---

[2] Cloud data is electronic data stored on multiple servers known as "the cloud" rather than on the physical electronic device, like the cell phone. *Cloud Storage*, TECHOPEDIA, https://www.techopedia.com/definition/26535/cloud-storage (last updated August 31, 2021). As permitted by the warrant, Officer Booth extracted the cloud data from Mr. Palms's cell phone to preserve it for a possible future warrant. The officers never obtained another warrant, and no one has searched the cloud data. Mr. Palms has not challenged the extraction of the cloud data in this appeal.

titled "Search Warrant" was not actually a warrant because it did not have a sufficient statement of probable cause, command language, or appropriate headings;[3] (2) the warrant lacked the particularity required by the Fourth Amendment because it did not limit the search to specific materials or to a specific crime; (3) the extraction and search of the data from the cell phone was unreasonable;[4] and (4) the good faith exception did not apply because well-trained officers would have understood this warrant was invalid.

The district court held a limited evidentiary hearing on the search of the cell phone. At the hearing, the district court heard from Officer Booth, who extracted the data from the cell phone, and Officer Oxford, who searched it.

Officer Booth testified that he reviewed the warrant and extracted the data for the search. Officer Booth explained that he first tried to perform more limited types of extractions known as a file extraction and a logical extraction, but they did not work on Mr. Palms's cell phone because these extraction methods were blocked by the phone's software or the carrier. He then resorted to the last extraction option available on the machine he was using, which was a broad physical extraction. Officer Booth did not contact any other agencies to help him limit his extraction because he believed they would have the same options he had. The physical extraction created a byte-for-byte copy

---

[3] Mr. Palms has not advanced this argument on appeal.

[4] Mr. Palms also argued that the warrant was too broad because it permitted officers to search for evidence of human trafficking between Mr. Palms and co-conspirators but did not identify who the co-conspirators were. He does not raise this argument on appeal.

of the cell phone with data and metadata. Officer Booth did not limit the search to certain types of files. He extracted all the data on the cell phone.

Officer Oxford testified about the methodology he used to search the data. He informally limited his search to the relevant time-period from September 2018, when Mr. Palms met M.W., to November 20, 2018, when they were arrested. His methodology involved viewing SMS messages, MMS messages, photographs, and emails. [5] Sometimes he used the search function to search key words, but he also viewed the evidence in their locations on the cell phone to determine their context. When Officer Oxford saw something unrelated to the crime of human trafficking, he moved on quickly. At one point, Officer Oxford discovered privileged attorney-client communications, and he promptly stopped his search to contact the prosecutor. He did not come across evidence of any crimes other than human trafficking during the search.

After the evidentiary hearing, the district court denied Mr. Palms's motion to suppress. The district court held the warrant satisfied the Fourth Amendment because it was supported by probable cause,[6] and it was sufficiently particular because the search was reasonable under *United States v. Loera*, 923 F.3d 907 (10th Cir. 2019).

---

[5] SMS stands for short messaging service, which is a system that allows cell phones to send and receive short text massages. *SMS*, OXFORD ENGLISH DICTIONARY (3d ed. 2009). MMS is an acronym for multimedia message service and refers to text messages combined with pictures, video, or sound files. *MMS*, CAMBRIDGE ENGLISH DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/mms#dataset_cbed (last visited October 7, 2021).

[6] The district court addressed the issue of whether the warrant was supported by probable cause even though Mr. Palms did not argue it in his motion.

Alternatively, the district court determined both the officers relied in good faith on the warrant. Mr. Palms asked the district court to reconsider, but the district court denied that motion.

### 2. Motion in Limine

Under Federal Rule of Evidence 412, evidence of the victim's prior sexual behavior is generally not admissible in a civil or criminal proceeding involving alleged sexual misconduct. Prior to trial, the Government submitted a Motion in Limine, invoking Rule 412 and requesting the district court prohibit Mr. Palms from introducing any evidence that M.W. had engaged in commercial sex acts before she met Mr. Palms. Mr. Palms opposed the motion on the ground that this evidence was necessary to protect his Fifth and Sixth Amendment rights. He also submitted a notice of sexual behavior evidence, identifying specific sexual behavior evidence he sought to admit. This included evidence that M.W. had voluntarily engaged in commercial sex before she met Mr. Palms, M.W. had an understanding of the commercial sex business before she met Mr. Palms, and M.W. knew how to post online advertisements for commercial sex before she met Mr. Palms.[7] Mr. Palms argued the evidence was constitutionally required because it supported his alternative theory that it was M.W. who recruited and enticed Mr. Palms to join her commercial sex business. He also said the evidence may be

---

[7] Mr. Palms also sought to introduce evidence of M.W.'s sexual relationship with him. That evidence was not admitted, but Mr. Palms does not challenge that decision on appeal.

necessary to impeach her credibility generally and specifically on the elements of the crimes with which Mr. Palms was charged.

The district court ultimately prohibited Mr. Palms from presenting evidence about M.W.'s prior sexual behavior under Rule 412. The district court determined the sexual behavior evidence was generally not admissible, but it left the final decision for trial because the evidence may be admissible if it was directly relevant to Mr. Palms's charges or to correct a misleading impression created by the testimony. The district court also ruled the evidence would not be allowed to impugn M.W.'s credibility generally, but it left open the possibility that Mr. Palms could use M.W.'s prior court testimony for direct impeachment purposes.

At trial, M.W. testified that prostitution was "not something [she] would choose to do on [her] own," ROA Vol. III at 1108. To diminish her credibility, Mr. Palms sought to introduce the evidence of her commercial sex acts prior to meeting Mr. Palms. With this evidence, Mr. Palms sought to dispute M.W.'s testimony about her fear of Mr. Palms when he identified himself as a pimp and the impression that Mr. Palms taught her how prostitution works and how to post solicitation ads online. The district court denied the request, stating the evidence of prior sexual behavior was irrelevant to whether Mr. Palms forced her to advertise and perform commercial sex acts in 2018.

3. **Trial and Conviction**

In December 2019, the Government tried the charges against Mr. Palms to a jury, but the jury could not reach a verdict. The district court declared a mistrial, and at the Government's request, set the case for retrial. Prior to the second trial, the Government

obtained a superseding indictment containing all three of the original charges and two

additional charges: transporting an individual for prostitution in violation of 18 U.S.C.

§ 2421(a) (Count Four) and online promotion and facilitation of prostitution in violation

of 18 U.S.C. § 2421A(a) (Count Five).

During the second trial, the district court granted a motion for acquittal as to Count

Five (online promotion and facilitation of prostitution), but it sent the rest of the charges

to the jury. The jury acquitted Mr. Palms on Count Three (retaliation against a victim and

causing bodily harm) and found him guilty on Counts One (sex trafficking by force,

fraud, and coercion), Two (attempted obstruction of sex trafficking enforcement), and

Four (transporting an individual for prostitution). The district court imposed a sentence of

235 months each on Counts One and Two, and 120 months on Count Four, all running

concurrently.

## II.    DISCUSSION

On appeal, Mr. Palms challenges the district court's decisions to admit the cell

phone evidence and to exclude evidence that M.W. engaged in commercial sex acts

before she met Mr. Palms. We undertake our analysis by first considering whether the

search and seizure of Mr. Palms's cell phone satisfied the requirements articulated in the

Fourth Amendment. Then, we review the district court's exclusion of the sexual behavior

evidence under Rule 412.

### A.    Search and Seizure

Mr. Palms appeals the district court's decision denying the motion to suppress the

evidence obtained from his cell phone because (1) the warrant was invalid under the

Fourth Amendment and (2) the search was unreasonable. When reviewing a district court's denial of a motion to suppress, we "view the evidence in the light most favorable to the government and accept the district court's factual findings unless they are clearly erroneous." *United States v. Grimmett*, 439 F.3d 1263, 1268 (10th Cir. 2006). But we review de novo the ultimate question of reasonableness under the Fourth Amendment. *Loera*, 923 F.3d at 915.

### 1. Applicable Law

The Fourth Amendment provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. In other words, the Fourth Amendment requires warrants to be supported by probable cause and to describe with particularity who and what can be searched and seized. After obtaining a warrant, the Fourth Amendment also requires officers to conduct the search and seizure reasonably. Here, Mr. Palms argues neither the warrant nor the subsequent search satisfied the constitutional requirements.

### 2. Warrant Particularity Requirement

Mr. Palms argues the warrant was not constitutionally valid because it did not particularly describe the things to be seized even though it was limited to evidence of human trafficking.[8] Thus, we must determine whether "the crime of human trafficking" is

---

[8] Mr. Palms briefly argues the warrant was not supported by probable cause. However, Mr. Palms did not identify probable cause as one of the issues on appeal,

a sufficiently specific crime such that a warrant's limitation to search and seize evidence of it satisfies the Fourth Amendment's particularity requirement. We hold that it is.

The Fourth Amendment's particularity requirement "'ensures that the search will be carefully tailored to its justifications[] and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.'" *United States v. Otero*, 563 F.3d 1127, 1131–32 (10th Cir. 2009) (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)). Because computers can contain enormous amounts of information and relevant evidence can be stored in any location, the Fourth Amendment requires warrants for computer searches to "affirmatively limit the search to evidence of specific . . . crimes or specific types of material." *Id.* at 1132 (quotation marks omitted).[9] The same standard applies to cell phones because they are essentially "'minicomputers that also happen to

describe the requirements for determining probable cause, cite any cases, or apply the facts to his probable cause argument. *See* Fed. R. App. P. 28(a)(8)(A) (requiring an appellant to include his or her "contentions and reasons for them, with citations to the authorities . . . on which the appellant relies"). Rather, the probable cause argument is essentially identical to his particularity argument, and it is located under a heading titled, "[t]he search violated the Fourth Amendment because the warrant failed the Fourth Amendment's particularity requirement and the search was overly broad and unreasonable." Aplt. Opening Br. at 11. Mr. Palms did not adequately brief his probable cause argument, so it is waived. *See United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) ("It is well-settled that arguments inadequately briefed in the opening brief are waived." (internal quotations omitted)). We decline to consider it in this appeal.

[9] The language in *United States v. Otero* requires that the warrant to search a computer be limited to "specific *federal* crimes." 563 F.3d 1127, 1132 (10th Cir. 2009) (emphasis added). However, a warrant issued by a state judge that is limited to evidence of a specific state crime also satisfies the particularity requirement of the Constitution. *See Mink v. Knox*, 613 F.3d 995, 1010 (10th Cir. 2010) (quoting *Otero* but removing the "federal" crime limitation).

have the capacity to be used as a telephone.'" *United States v. Russian*, 848 F.3d 1239, 1245 (10th Cir. 2017) (quoting *Riley v. California*, 573 U.S. 373, 393 (2014)).

The guiding purpose of this standard is to establish practical guidelines about what can be searched and seized, leaving nothing to the discretion of the officers executing the warrant. *United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988) ("A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." (quotation marks omitted)). Thus, "practical accuracy rather than technical precision controls the determination of whether a search warrant adequately describes the place to be searched." *Otero*, 563 F.3d at 1132 (quotation marks omitted).

As Mr. Palms contends, the warrant was not limited to any specific types of materials, such as text messages, emails, or pictures. Rather, the warrant said the information to be searched and seized "include[d], but [was] not limited to, all digital evidence stored on removable storage and magnetic or electronic data contained in the contents of such tablet, cell phone, laptop, camera and/or memory cards." ROA Vol. I at 68. Such a broad authorization is permissible under our precedent, so long as the warrant contained some "limiting principle." *See Russian*, 848 F.3d at 1245.

The Government contends the warrant contained such a limitation because it permitted the officers to search and seize only evidence of "human trafficking." But Mr. Palms argues "human trafficking" is not sufficiently specific because the warrant did not cite a specific criminal statute and because human trafficking is a broad term that gave the officers "carte blanche to search and seize anything in the phone's contents they

13

believed might pertain in any way to any human trafficking, at any time, whether for forced labor, for sex, for drug trafficking, or anything else arguably tied to the broad universe of 'human trafficking.'" Aplt. Opening Br. at 18. We disagree.

To be sufficiently particular, search warrants do not have to identify specific statutes for the crimes to which they are limited. *See United States v. Christie*, 717 F.3d 1156, 1165 (10th Cir. 2013) (holding a warrant was particular when it was limited to information "'related to the murder, neglect, and abuse of'" a child); *United States v. Brooks*, 427 F.3d 1246, 1252–53 (10th Cir. 2005) (holding a warrant satisfied the particularity requirement when it authorized officers to search a computer "for evidence of child pornography"). Mr. Palms's contrary suggestion would inject the kind of technical precision the Fourth Amendment does not require. *Christie*, 717 F.3d at 1166 (explaining the particularity requirement has never "been understood to demand of a warrant technical precision or elaborate detail but only practical limitations affording reasonable specificity" (internal quotation marks omitted)). Therefore, the lack of a statutory citation does not automatically render a warrant invalid. Rather, we must determine whether the warrant adequately limited the scope of the search despite the absence of a statutory reference.

The warrant here is sufficiently limited. Oklahoma state law explicitly prohibits "human trafficking." Okla. Stat. tit. 21, § 748(B) ("It shall be unlawful to knowingly engage in human trafficking."). And the definition of "human trafficking" is not as unrestrained as Mr. Palms suggests. It is defined as "modern-day slavery that includes, but is not limited to, extreme exploitation and the denial of freedom or liberty of an

14

individual for purposes of deriving benefit from that individual's commercial sex act or labor." *Id.* § 748(A)(4).

Although Oklahoma's definition of "human trafficking" includes both types of human trafficking—sex trafficking and labor trafficking[10]—it is still a sufficiently specific, defined crime. *See, e.g.*, *United States v. Burgess*, 576 F.3d 1078, 1083, 1091 (10th Cir. 2009) (holding a warrant was sufficiently particular when it authorized a search for evidence of the sale of any illegal controlled substance even though probable cause for the warrant was based on evidence of marijuana and cocaine). It therefore does not run afoul of our rejection of warrants that broadly encompass "any crime." *Cf. Otero*, 563 F.3d at 1132–33 (holding a warrant was not particular when it had "no limiting instruction whatsoever" and authorized "a wide-ranging search of [the appellant]'s computer"); *Cassady v. Goering*, 567 F.3d 628, 635–36 (10th Cir. 2009) (holding a warrant was not particular when there was only "probable cause to search for evidence related to marijuana cultivation, yet the warrant authorized the seizure of *all* possible evidence of *any* crime in *any* jurisdiction").

---

[10] At times, sex trafficking and labor trafficking are considered two separate crimes. *See, e.g.*, 18 U.S.C. § 1590 (labor trafficking); 18 U.S.C. § 1591 (sex trafficking). However, in practice, they have essentially the same elements because they both require a perpetrator to obtain or force someone to perform services. The type of human trafficking simply turns on whether the services are sexual or not. *See, e.g.*, *United States v. Obie*, No. 1:18-CR-00424, 2019 WL 6873520, at *4 (N.D. Ga. Dec. 17, 2019) (recognizing sex trafficking is a type of human trafficking); *Wacko's Too, Inc. v. City of Jacksonville*, 522 F. Supp. 3d 1132, 1142 (M.D. Fla. 2021) (quoting a Florida ordinance that recognizes sex trafficking as a common form of human trafficking).

Because Oklahoma law labels the crime as "human trafficking," and there is no separate "sex trafficking" crime, it is "difficult to imagine how the . . . warrant could have been phrased more specifically." *United States v. Le*, 173 F.3d 1258, 1275 (10th Cir. 1999). Indeed, the Oklahoma state judge who issued the warrant and the Tulsa police officers who executed it would have understood human trafficking to be a specific crime. And most importantly, the existence of a statutory definition of "human trafficking" would have enabled the executing Tulsa police officers to understand what evidence the warrant permitted them to search and seize. Therefore, the warrant's limitation to evidence of the crime of human trafficking satisfied the Fourth Amendment's particularity requirement.[11]

### 3. Reasonableness of the Search and Seizure

After obtaining a warrant, the officers "must conduct their search 'strictly within the bounds set by the warrant.'" *Loera*, 923 F.3d at 916 (quoting *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 395 n.7 (1971)). "Determining whether a search exceeds the scope of its authorizing warrant is, like most inquiries under the Fourth Amendment, an exercise in reasonableness assessed on a case-by-case basis." *Id.* In general, "investigators executing a warrant can look anywhere where evidence described in the warrant might conceivably be located." *Id.* (citing *United States v. Ross*,

---

[11] Even if we were to agree with Mr. Palms that the warrant was deficient, however, we would affirm the district court's denial of the motion to suppress based on the good faith exception. *United States v. Leon*, 468 U.S. 897, 918–19 (1984) (applying the good faith exception to the exclusionary rule).

456 U.S. 798, 824 (1982)). However, that limitation can be difficult to enforce in a computer search where relevant data could be stored anywhere. *See id.*

To address this problem, we have focused on *how* the computer search was conducted rather than *what* was searched.[12] *See id.* at 917. "Shifting our focus in this way is necessary in the electronic search context because search warrants typically contain few—if any—restrictions on where *within a computer* or other electronic storage device the government is permitted to search." *Id.* (emphasis in original). The reasonableness of the search method "depends on the particular facts of a given case." *Id.* at 920.

Mr. Palms first argues the extraction of information from his cell phone was too broad. Officer Booth testified he could not perform a more limited file extraction or a logical extraction on Mr. Palms's cell phone, so he conducted a broad physical extraction of the entire contents and metadata. And Officer Booth testified that seeking help from other agencies would have been pointless because he believed they had the same extraction options as he had. He therefore extracted a byte-for-byte copy of the contents of the cell phone and captured a vast amount of information, including personal information unrelated to the suspected crime.

---

[12] The district court confused the Fourth Amendment's particularity requirement with the standard we have articulated for analyzing whether a computer search was reasonable. ROA Vol. I at 147 (citing *United States v. Loera*, 923 F.3d 907, 917 (10th Cir. 2019), and stating that "[i]nstead of applying rigid rules requiring particularity when seeking a warrant, the focus should be on the reasonableness of how the search is carried out by law enforcement officials"). But our holding in *Loera* involved only the reasonableness of the search, not the warrant particularity requirement. 923 F.3d at 915–21 (considering the reasonableness of two searches).

17

Mr. Palms also argues the search of the extracted data should have been limited so that the officers could not view any information that was not related to the suspected crime. The district court found that Officer Oxford limited his search to the time after Mr. Palms met M.W. The court also determined that Officer Oxford searched SMS messages, MMS messages, photographs, and some emails, and that he would move on quickly when he came across information or communications that were not potentially relevant to the crime of human trafficking. The district court noted that Officer Oxford discovered some privileged attorney-client communications during his search and immediately stopped to consult with the prosecutor.

We have previously found a similar extraction and search to be reasonable. In *United States v. Burgess*, the officers obtained a warrant to search the defendant's property for evidence of controlled substances. 576 F.3d at 1083. During the search, the officers found a hard drive and searched it. To begin the search, they "ma[d]e a byte-for-byte copy of the hard drive." *Id.* at 1084. Although this process captured information beyond the scope of the warrant, we did not hold the search was unreasonable. *Id.* at 1095. Rather, we explained that the broad extraction was consistent with the reality that evidence of the crime could be found in various file types. *Id.* at 1093. The search of the extracted files then proceeded with the focus on files that might contain evidence of drug trafficking. *Id.* at 1094–95. The officers viewed files even if they were not obviously labeled with titles related to the suspected crime to confirm they had not been deceptively labeled, but if the file did not contain relevant evidence, the officers moved on

18

immediately. *Id.* at 1094–95. In *Burgess*, we concluded the extraction and the search were reasonable. *Id.* at 1095.

We reach the same conclusion here. As in *Burgess*, the evidence of human trafficking in this case could have taken many forms, such as text messages, emails, photographs, internet history, and transaction applications. For this reason, the warrant did not limit the search to one type of information contained on the cell phone. And the physical extraction of all the data from the cell phone was reasonable. Likewise, Officer Oxford limited his search to the time-period when Mr. Palms knew M.W. and viewed the types of files that were most likely to contain evidence of the crime of human trafficking. When he came across unrelated personal information or communications, he quickly moved to the next thing. And when he came across privileged attorney-client communications, he immediately stopped his search and contacted the prosecutor. This search methodology was sufficiently limited. Therefore, both the extraction and the search methodology were reasonable.

Because the warrant and the search of the cell phone complied with the Fourth Amendment, we affirm the district court's denial of the motion to suppress.

## B.　*Federal Rule of Evidence 412*

Mr. Palms argues the district court erred by excluding evidence of M.W.'s prior commercial sex work under Federal Rule of Evidence 412. Specifically, Mr. Palms appeals the decision to exclude evidence that (1) M.W. had knowledge of how to post

online advertisements for commercial sex before she met Mr. Palms,[13] (2) M.W. had voluntarily engaged in commercial sex acts before meeting Mr. Palms, and (3) M.W. knew about certain aspects of the commercial sex business before she met Mr. Palms. He argues exclusion of this evidence violated the Confrontation Clause and his federal due process rights.

"To the extent the challenge to the exclusion of evidence proffered by the defendant is based on a constitutional objection . . . we review the district court's ruling excluding that evidence *de novo*." *United States v. Pablo*, 696 F.3d 1280, 1297 (10th Cir. 2012). Otherwise, a district court's ruling on the admissibility of evidence is reviewed for abuse of discretion. *United States v. A.S.*, 939 F.3d 1063, 1071 (10th Cir. 2019).

---

[13] Mr. Palms says the evidence that M.W. posted online advertisements for commercial sex before she met him is arguably not sexual behavior evidence under Rule 412. Mr. Palms did not raise this issue at the district court. Instead, he affirmatively described this evidence as sexual behavior evidence. Furthermore, Mr. Palms does not argue that the district court's decision that this was sexual behavior evidence would result in plain error. Thus, the argument is waived. *See United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019) ("When an appellant fails to preserve an issue and also fails to make a plain-error argument on appeal, we ordinarily deem the issue waived (rather than merely forfeited) and decline to review the issue at all—for plain error or otherwise."); *United States v. Walker*, 918 F.3d 1134, 1153–54 (10th Cir. 2019) ("To be clear, whether issues should be deemed waived is a matter of discretion."). The Government did not suggest that Mr. Palms waived the argument, so the Government may have waived the waiver on this issue. *See Leffler*, 942 F.3d at 1199. But because Mr. Palms affirmatively represented this evidence as sexual behavior evidence before the district court, we decline to review this argument for the first time on appeal. *Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.").

## 1. Applicable Law

Under Federal Rule of Evidence 412, "[e]vidence offered to prove that a victim engaged in other sexual behavior" and "[e]vidence offered to prove a victim's sexual predisposition" are "not admissible in any civil or criminal proceeding involving alleged sexual misconduct." Fed. R. Evid. 412(a). The purpose of this rule is "to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping." Fed. R. Evid. 412, advisory committee notes to 1994 amendments. However, there is an exception in criminal cases when the exclusion of the evidence "would violate the defendant's constitutional rights." Fed. R. Evid. 412(b)(1)(C).

As relevant here, defendants have constitutional rights to due process and to confront witnesses against them. The Fifth Amendment provides, "[n]o person shall . . . be deprived of life, liberty, or property, without due process of the law." U.S. Const. amend. V. This amendment provides individuals with both substantive and procedural due process rights. As it relates to this appeal, the Due Process Clause provides a defendant with the right to a fair trial. *Fero v. Kerby*, 39 F.3d 1462, 1478 (10th Cir. 1994) ("A fair trial in a fair tribunal is a basic requirement of due process." (quoting *In re Murchison*, 349 U.S. 133, 136 (1955))).

The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This is known as the Confrontation Clause, and its purpose is to guarantee defendants "'an *opportunity* for effective cross-examination.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per

21

curiam)) (emphasis in original). However, the right is not limitless. It does not guarantee a defendant the right to cross-examine witnesses "in whatever way, and to whatever extent, the defense might wish." *Id.* (quoting *Fensterer*, 474 U.S. at 20).

Together, the Fifth and Sixth Amendments provide defendants with the "right to present a defense." *United States v. Oldman*, 979 F.3d 1234, 1252 (10th Cir. 2020) (quotation marks omitted).

## 2. Analysis

Mr. Palms argues the exclusion of evidence that M.W. understood and participated in commercial sex work before she met him violated his constitutional rights to a fair trial, to confront witnesses against him, and to present a full defense. First, he argues the sexual behavior evidence is relevant because it "tends to counter" the Government's assertion that Mr. Palms "enticed or recruited" M.W. to perform commercial sex acts— an element of Count One. Aplt. Opening Br. at 28. Second, he argues the evidence would "impeach the credibility of" M.W. *Id.* at 30.

Pursuant to the Confrontation Clause and the Due Process Clause, sexual behavior evidence "may be required to be admitted . . . where relevant and probative on a central issue of sexual offense charges." *A.S.*, 939 F.3d at 1072 (quotation marks omitted). Evidence is considered relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. However, relevance is not enough; the evidence must also be probative of a central issue to be required by the Constitution. In addition, "the Constitution does not mandate the admission of irrelevant or general impeachment evidence." *A.S.*, 939 F.3d at 1074.

Mr. Palms's first argument is not persuasive because the sexual behavior evidence is not probative of a central issue in this case. Evidence that a sex trafficking victim previously engaged in prostitution is irrelevant to whether that victim was forced or coerced into working as a prostitute at a later date. *See* 18 U.S.C. § 1591(a) (prohibiting using "means of force, threats of force, fraud, [and] coercion" to "cause [a] person to engage in a commercial sex act"). Other circuit courts have consistently come to the same conclusion. *United States v. Rivera*, 799 F.3d 180, 185 (2d Cir. 2015) ("Evidence of victims' prior acts of commercial sex is irrelevant to whether those victims were *coerced into* working as prostitutes."); *United States v. Roy*, 781 F.3d 416, 420 (8th Cir. 2015) ("The victim's participation in prostitution either before or after the time period in the indictment has no relevance to whether Roy beat her, threatened her, and took the money she made from prostitution in order to cause her to engage in commercial sex."); *United States v. Cephus*, 684 F.3d 703, 708 (7th Cir. 2012) (explaining evidence the victim had been a prostitute before "would not be evidence that she consented to be beaten and to receive no share of the fees paid by the johns she serviced"); *see also United States v. Brown*, 810 F. App'x 105, 108 (3d Cir. 2020) (unpublished) ("[W]hether Brown's victims engaged in prostitution before 2011 or after 2014 would have had little if any probative value."), *cert. denied*, 141 S. Ct. 443 (2020); *United States v. Valenzuela*, 495 F. App'x 817, 819–20 (9th Cir. Nov. 2, 2012) (per curiam) (unpublished) ("Appellants cannot show the relevance of questions about prior prostitution to either Appellants' knowledge of the use of force, fraud, or coercion, or the victims' consent to work in prostitution."). Even if M.W. participated in commercial sex work in 2017 and

knew how to post ads for commercial sex, that does not tend to prove Mr. Palms did not force her to engage in prostitution during the period charged. Indeed, this lack of probative value is exactly why Rule 412 exists. It "preclude[s] defendants from arguing that because the victim previously consented to have sex—for love or money—her claims of coercion should not be believed." *Rivera*, 799 F.3d at 185.

As to the issue of impeachment, Mr. Palms argues he should have been permitted to present the evidence of M.W.'s prior commercial sex work when M.W. testified prostitution is "not something [she] would choose to do on [her] own." Aplt. Opening Br. at 29. Because the sexual behavior evidence is not relevant to or probative of the issues on trial, this is general impeachment evidence that is not required by the Constitution. *See A.S.*, 939 F.3d at 1074 (holding evidence of prior sexual behavior is not constitutionally required if it would solely diminish the witness's general credibility). And we cannot say the district court abused its discretion in excluding the sexual behavior evidence under Rule 412. Thus, we affirm the district court's ruling excluding the evidence of M.W.'s prior commercial sex work.

### III.    CONCLUSION

For the foregoing reasons, we AFFIRM the convictions.