FILED
United States Court of Appeals
Tenth Circuit

July 3, 2024

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

SALVADOR SALAS, JR.,

    Defendant - Appellant.

No. 23-8027

_____

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 1:21-CR-00077-SWS-1)**

_____

Kari S. Schmidt, Conlee, Schmidt & Emerson LLP, Wichita, Kansas, for Defendant-Appellant.

Christyne M. Martens, Assistant United States Attorney (Nicholas Vassallo, United States Attorney, with him on the brief), Office of the United States Attorney, Casper, Wyoming, for Plaintiff-Appellee.

_____

Before **PHILLIPS**, **SEYMOUR**, and **MURPHY**, Circuit Judges.

_____

**SEYMOUR**, Circuit Judge.

_____

In July 2021, based on evidence seized pursuant to two warrants, one for illicit drugs and one for child pornography, Mr. Salvador Salas, Jr. was charged with, and eventually convicted of, one count of possession and five counts of production of child

pornography. Prior to trial, Mr. Salas argued that all evidence found pursuant to the child pornography warrant should be suppressed because the warrant violated the Fourth Amendment. The district court agreed a Fourth Amendment violation had occurred but declined to suppress the child pornography evidence. It found that suppression was inappropriate because Mr. Salas's child pornography would have been inevitably discovered. On appeal, Mr. Salas contends that his child pornography would not have been inevitably discovered and, as such, should have been suppressed. We disagree and affirm.

## I.

The factual events constituting Mr. Salas's case began February 27, 2021. That evening, while she visited his home, Mr. Salas gave methamphetamine to S.V.,[1] a 13-year-old girl, after which he sexually abused, filmed, and photographed her. S.V. was the daughter of Chelsea Gonzalez who had been a friend to Mr. Salas for approximately six years and whose children, including S.V., had often visited, stayed with, and babysat for Mr. Salas without incident. However, when S.V. returned home that night, Gonzalez noticed she was acting "really weird and not correct" and had a swollen white blister in her mouth. Rec., vol. V at 744. Concerned, Gonzalez took S.V. to the hospital, where a urinary analysis tested positive for methamphetamines. That next day, Gonzalez filed a police report with the Casper Police Department.

On March 1, based on Gonzalez's report, police officers obtained a warrant (the "First Warrant") to search Mr. Salas's home and vehicle for drugs and related evidence. On

---

[1] As referred to in the briefs, we also refer to the child victim as "S.V."

March 2, they executed it. During their search of Mr. Salas's home, the officers arrested him and his girlfriend, seized "a significant amount of narcotics," and seized Mr. Salas's iPhone and one hard drive. Aplt. Br. at 9. After interviewing Mr. Salas's girlfriend and noticing that he owned a significant amount of video and photography equipment, the officers further suspected him of producing or possessing child pornography. That same day they applied for, obtained, and executed a second search warrant (the "Second Warrant") to search for such evidence. Executing the Second Warrant, officers seized a Sony laptop, MacBook laptop, and Seagate hard drive from Mr. Salas's residence. In a subsequent search of the devices, a digital forensic analyst found child pornography in Mr. Salas's iPhone's Photo app (seized under the First Warrant) and on the Sony laptop and Seagate hard drive (seized under the Second Warrant).

On March 31, Mr. Salas was re-arrested on state charges of sexual assault, sexual exploitation of children, and drug use. While in custody, he made several incriminating statements confirming his production and possession of the child pornography on his devices.

The government indicted Mr. Salas in July 2021 on six federal counts of possessing and producing child pornography. In response, Mr. Salas moved to suppress the child pornography found on the Sony laptop and Seagate hard drive on the grounds that the Second Warrant lacked probable cause and, as such, violated his Fourth Amendment rights. He also argued that the child pornography on his iPhone, seized under the First Warrant, would not have been inevitably discovered because the First Warrant only authorized the

3

*seizure*, not the *search*, of his iPhone. Separately, Mr. Salas moved to suppress his incriminating March 31 statements, asserting that the police officers had ignored his invocation of his right to legal counsel.

Following a combined evidentiary hearing on Mr. Salas's motions, the district court declined to suppress the child pornography found on Mr. Salas's iPhone. It agreed with Mr. Salas that the Second Warrant, under which the other devices containing child pornography were seized, had "wholly lack[ed] probable cause." Rec., vol. II at 145. But it held that the First Warrant allowed for both the seizure and search of Mr. Salas's iPhone and therefore child pornography would have been inevitably discovered by the officers as part of their investigation into Mr. Salas's drug activities. The court separately declined to suppress Mr. Salas's statements, finding that he did not clearly invoke his right to counsel. The government presented the child pornography evidence at trial, and Mr. Salas was convicted on all counts. He timely appealed.

## II.

Mr. Salas argues that the district court improperly denied his motions to suppress. "When reviewing a district court's denial of a motion to suppress, we view the evidence in the light most favorable to the government and accept the district court's factual findings unless they are clearly erroneous." *United States v. Palms*, 21 F.4th 689, 697 (10th Cir.

2021). We review de novo the ultimate question of reasonableness under the Fourth Amendment.[2] *Id.*

The Fourth Amendment establishes a right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. To be constitutionally "reasonable," a warrant must be supported by probable cause and describe with particularity the places to be searched and evidence to be seized. *See id.*; *United States v. Russian*, 848 F.3d 1239, 1244 (10th Cir. 2017); *Palms*, 21 F.4th at 697. Moreover, "[a]fter obtaining a warrant, the Fourth Amendment also requires officers to conduct the search and seizure reasonably." *Palms*, 21 F.4th at 697. When a search violates the Fourth Amendment's mandates, any evidence obtained "will [generally] be suppressed under the exclusionary rule." *United States v. Christy*, 739 F.3d 534, 540 (10th Cir. 2014). *See also Nix v. Williams*, 467 U.S. 431, 442–44 (1984) (discussing the exclusionary rule's applicability and rationale); *United States v. Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005) ("When a search violates the Fourth Amendment, the exclusionary rule normally dictates that evidence obtained as a result of that search be suppressed."). If applicable, the reach of the exclusionary rule is broad: Its "sanction applies to any 'fruits' of a constitutional violation," including "evidence [that is] tangible, physical material actually seized in an illegal search, items observed or words overheard in the course of the unlawful activity, or confessions or statements of the accused obtained during an illegal arrest and detention." *United States v. Crews*, 445 U.S.

---

[2] The government contends that Mr. Salas waived his particularity argument and that we should only review it under plain error if we review it at all. Given that Mr. Salas's appeal is unsuccessful under de novo review, we need not address this argument.

463, 470 (1980). That said, the exclusionary rule has never been an absolutist doctrine and has long been subject to exceptions, albeit "jealously and carefully drawn" ones. *Jones v. United States*, 357 U.S. 493, 499 (1958) (citations omitted). One such exception is the inevitable discovery doctrine, under which "illegally obtained evidence may be admitted if it 'ultimately or inevitably would have been discovered by lawful means.'" *See Christy*, 739 F.3d at 540 (quoting *Nix*, 467 U.S. at 444). As we have noted:

> The[se] "lawful means" need not be a second, independent investigation. Rather, the inevitable discovery doctrine will apply if there was "one line of investigation that would have led inevitably to the obtaining of a search warrant by independent lawful means but was halted prematurely by a search subsequently contended to be illegal."

*United States v. Loera*, 923 F.3d 907, 928 (10th Cir. 2019) (quoting *Christy*, 739 F.3d at 540) (citations omitted). The crux of the inevitable discovery doctrine "is to place the government officers in the same positions they would have been in had the impermissible conduct not taken place" and then to ask "whether the government would have inevitably discovered the evidence lawfully." *Id.* at 928 (quoting *Nix*, 467 U.S. at 447). The government must prove by a preponderance of the evidence that the child pornography would have been discovered without the Fourth Amendment violation. *Christy*, 739 at 540.

Mr. Salas argues the district court improperly denied his first motion to suppress by erroneously applying the inevitable discovery doctrine. He contends the doctrine is inapplicable for three reasons: (1) the First Warrant was not sufficiently particular to allow the police to search his iPhone; (2) the government did not prove by a preponderance of the evidence that it would have obtained a subsequent warrant to search his iPhone for child

6

pornography; and (3) the government did not prove by a preponderance of the evidence that, absent its unlawful conduct, Mr. Salas would have given consent to the police to search his iPhone. Because we "have discretion to affirm on any ground adequately supported by the record," Mr. Salas's climb to reversal is steep. *Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004). To obtain a reversal, he must succeed on all of his three legal challenges, while the government need only succeed on one to affirm.

We ultimately need not rule on Mr. Salas's second or third arguments because his appeal fails on his first one. We hold that evidence of Mr. Salas's child pornography would have been inevitably discovered because the First Warrant was sufficiently particular to justify a search of his iPhone and the police would have conducted the search reasonably. Because Mr. Salas's March 31 confession was the fruit of the government's search of his iPhone and because the search of his iPhone was proper under the inevitable discovery doctrine, Mr. Salas's confession was not "poisoned." The district court was correct to deny both of Mr. Salas's motions to suppress.

A.

We start with Mr. Salas's first challenge and note that it raises two distinct inquiries. First, was the First Warrant sufficiently "particular" to justify the seizure and search of Mr. Salas's iPhone?[3] And, second, assuming it was, was the search conducted "strictly within

---

[3] Of course, all warrants must also be supported by probable cause. *United States v. Otero*, 563 F.3d 1127, 1131 (10th Cir. 2009); *Palms*, 21 F.4th at 697. While Mr. Salas successfully challenged the probable cause of the Second Warrant, he did not similarly challenge the First Warrant and does not attempt to raise that issue on appeal.

the bounds set by the warrant," i.e., "reasonably?" *See United States v. Loera*, 923 F.3d 907, 916 (10th Cir. 2019). *See also Palms*, 21 F.4th at 697; *United States v. Wagner*, 951 F.3d 1232, 1243 (10th Cir. 2020).

1.

"The Fourth Amendment requires . . . that warrants . . . 'particularly describ[e] the place to be searched, and the places or things to be seized.'" *Otero*, 563 F.3d at 1131 (quoting U.S. Const. amend. IV) (alteration in original). This constitutional requirement "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id.* at 1131–32 (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)). Given "[t]he modern development of the personal computer and its ability to store and intermingle a huge array of one's personal papers in a single place," our circuit has observed that "the particularity requirement [has become] that much more important" in the context of electronic searches. *Id.* at 1132. To satisfy the "particularity" prong of the Fourth Amendment, then, we have held that "'warrants for computer searches must *affirmatively limit* the search to evidence of specific federal crimes or specific types of material.'" *Palms*, 21 F.4th at 698 (quoting *Otero*, 563 F.3d at 1132) (emphasis added).[4] We apply this same standard to cellphones "because they are essentially 'minicomputers that also happen

---

[4] "Warrants do not have to identify specific statutes for the crimes to which they are limited" to satisfy particularity. *Palms*, 21 F.4th at 698–99. Rather, we consider "whether the warrant adequately limited the scope of the search despite the absence of a statutory reference." *Id.* at 699. *See also Russian*, 848 F.3d at 1245.

8

to have the capacity to be used as a telephone.'" *Id.* (quoting *Russian*, 848 F.3d at 1245). The limitations in the search warrant are key. We have held electronic searches invalid "where we could discern *no limiting principle*: where, for example, the warrant permitted a search of 'any and all' information, data, devices, programs, and other materials." *Russian*, 848 F.3d at 1245 (quoting *United States v. Christie*, 717 F.3d 1156, 1164–65 (10th Cir. 2013)) (emphasis added). *See also Otero*, 563 F.3d at 1132–33. That said, so long as we can discern some "limiting principles" to the warrant, "broad authorization[s]" are permissible. *Palms*, 21 F.4th at 698.

To guide us, we look to a case that is factually similar, *United States v. Burgess*, 576 F.3d 1078 (10th Cir. 2009). There, following a traffic stop in which they discovered drugs in his motor home, officers came to suspect Mr. Burgess of drug trafficking. *Burgess*, 576 F.3d at 1082. They obtained a warrant that authorized a search of Burgess's motor home for, among other things, "certain property and evidence to show the transportation and delivery of controlled substances, which may include . . . pipes, bongs, syringes, packaging material, *computer records*, scales . . . ." *Id.* at 1083 (emphasis added). Pursuant to this warrant, officers seized two hard drives from Burgess's motor home, on which they eventually found child pornography. *Id.* at 1083–84. The district court denied Burgess's motion to suppress the evidence. *Id.* On appeal, we noted that although the inclusion of "computer records" might appear to be an "anomaly," the warrant provided the necessary context for determining its scope. *Id.* at 1091. Had the warrant been "read to allow a search of all computer records without description or limitation," we cautioned, it would have

9

failed particularity. *Id.* But the warrant did not do so. Its authorized "search . . . was limited to evidence of drugs and drug trafficking and, as it relates to the computer, was limited to the kind of drug and drug trafficking information likely to be found on a computer." *Id.* That was sufficiently particular.

Here, then, our first step is to analyze the First Warrant to determine if it contained appropriate limiting principles. The First Warrant, issued by a Wyoming appellate court judge, authorized officers to search and seize evidence in three places: (1) "on the person of Salvador Salas"; (2) "on the premises" of his home; and (3) in his vehicle. Rec., vol. III at 87. Specifically, it authorized officers to search for and seize:

> Controlled substances including, methamphetamine, heroin and marijuana; Evidence to show the use and delivery of a controlled substance; to include, paraphernalia designed for use in the weighing, cutting, ingesting, and packaging of controlled substances, *records, and/or receipts, written or electronically stored*, records that show ownership of other property. . . .

*Id.* (emphasis added).[5]

We discern several limiting principles in the First Warrant. Like the warrant in *Burgess*, the First Warrant authorized police to search only for specific kinds of digital evidence, specifically, "records and/or receipts, written or electronically stored." *Id.* Further, the warrant "provided the necessary context for determining its scope," *Burgess*, 576 F.3d at 1091. The officers could only search for records and/or receipts "show[ing] use and delivery of a controlled substance." Rec., vol. III at 87. They were not empowered to

---

[5] Both parties agree that Mr. Salas's iPhone, which was found on his bed next to him when he was arrested on March 2, 2021, was properly seized pursuant to the First Warrant.

go on a fishing expedition for everything on Mr. Salas's iPhone. The warrant and the officers' search were limited to electronic records and receipts and, in addition, they were "limited to the kind of drug and drug trafficking information likely to be found" on Mr. Salas's cellphone. *Burgess*, 576 F.3d at 1091. Admittedly the First Warrant did not identify a specific criminal statute for which the government was investigating Mr. Salas, but we have never held that to doom particularity. *See Palms*, 21 F.4th at 698–99. "[W]arrants may pass the particularity test if they limit their scope either to evidence of specific [] crimes or to specific types of material." *Russian*, 848 F.3d at 1245 (quoting *Christie*, 717 F.3d at 1165) (cleaned up). The First Warrant explicitly delimited the kind of illicit conduct, "use and delivery of [] controlled substance[s]", that the government was investigating Mr. Salas for. Rec., vol. III at 87. This is sufficient. Finally, we observe another limiting principle in the First Warrant: geography. The warrant limited the geographic reach of the government's electronic search to devices found in only three places: in Mr. Salas's residence, on his person, and in his vehicle. Any phones, computers, or other electronic devices found outside and beyond these areas would have been *per se* off-limits to the police unless and until they had obtained a separate warrant to search them. *See, e.g.*, *Russian*, 848 F.3d at 1245. In this context, we are convinced the First Warrant contained several affirmative "limiting principles" and so satisfied the Fourth Amendment's particularity requirement.[6]

---

[6] To be sure, this warrant is not an ideal specimen. As even the government admitted during oral argument, the First Warrant was "sparse." The more particular a warrant, the

But Mr. Salas advances a new argument. He contends that the First Warrant was only sufficiently particular to authorize the *seizure* of his iPhone, but not so particular as to authorize the *search* of it. Essentially, Mr. Salas argues that cellphones must be understood as not only "effects" (things) under the Fourth Amendment, but also as "places," and that to lawfully search a cellphone's data, a warrant must independently identify and authorize that cellphone as a "place" to be searched. Simply listing "electronically stored records" in a warrant, as was done in the First Warrant here, does not, Mr. Salas contends, authorize officers to search a cellphone even if they properly seized it. In that case, i.e., if a warrant does not list the seized cellphone as a discrete "place," then the police must get another warrant before searching it.

To support his claim, Mr. Salas points us to two cases: the Supreme Court's decision in *Riley v. California*, 573 U.S. 373 (2014), and our decision in *United States v. Russian*. We find neither particularly persuasive. *Riley* concerned "the reasonableness of a *warrantless* search [of an individual's cellphone] incident" to the lawful arrest of that individual and the Court ultimately held that "officers must generally secure a warrant before conducting such a search." *Riley*, 573 U.S. at 382, 386 (emphasis added).[7] This is

---

better. However, that a better warrant could have been issued does not make this one legally insufficient. The First Warrant's particularity meets the bar set under our caselaw. That is enough.

[7] To illustrate the dissimilarities, both the combined cases in *Riley* concerned individuals arrested by officers while in their automobiles; officers then conducted warrantless searches of the phones seized when those individuals were arrested. *Riley*, 573 U.S. at 378–81. Here, Mr. Salas was arrested in, and his phone was seized from, his home by officers who then searched his phone pursuant to a valid warrant.

12

not analogous to Mr. Salas's case, which deals with the particularity of a *warranted* search in which his cellphone was properly seized. To apply *Riley* to Mr. Salas's case would be to cherry-pick and graft a holding from an independent area of Fourth Amendment law. We do not conflate legal doctrines so casually.

In *Russian*, two phones were seized incident to Russian's arrest, and a warrant was sought and issued to search his residence and seize any additional phones. *Russian*, 848 F.3d at 1242–43. Police used this warrant to then search the two already-seized phones. *Id.* We found the warrant failed particularity because it "did not identify either of the phones that were already in [the police's] custody, nor did it specify what material . . . law enforcement was authorized to seize." *Id.* at 1245. Mr. Salas argues that *Russian* thus stands for the proposition "that mobile digital storage devices, like cellphones . . . constitute not only evidence to be seized, but co-extensively are places to be searched." Aplt. Br. at 26. This reads *Russian* too broadly. We found *Russian*'s warrant insufficiently particular to justify the search of the already-seized cellphones because the warrant *only* authorized the search of Russian's apartment and any cellphones inside; it said nothing about the already-seized phones. *Russian*, 848 F.3d at 1243. We never held that the two already-seized phones were separate "places"; we simply held that they were not explicitly included in the warrant and, as such, the warrant did not authorize their search. *Id.* at 1245 ("Although the [affidavit] requested authorization to search the two Samsung cell phones law enforcement had seized at the time of Russian's arrest . . . the warrant itself merely authorized a search of Russian's residence and seizure of any cell phones found inside. The

13

warrant did not identify either of the phones that were already in law enforcement's custody . . . .").

We decline Mr. Salas's invitation to establish a new legal rule that every search of a cellphone requires a discrete authorization via warrant. Rather, per our caselaw, we hold that the First Warrant contained sufficient limiting principles to satisfy the Fourth Amendment's particularity requirement.

2.

"[O]btaining a sufficiently particular warrant is just the first step to conducting a reasonable search. The officers tasked with executing a sufficiently particular warrant must conduct their search 'strictly within the bounds set by the warrant.'" *Loera*, 923 F.3d at 916 (quoting *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 395 n.7 (1971)). "If the scope of the search exceeds that permitted by the terms of a validly issued warrant . . . the subsequent seizure [of evidence] is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140 (1990). This is "an exercise in reasonableness assessed on a case-by-case basis." *Loera*, 923 F.3d at 916.

We recognize the general rule that "investigators executing a [sufficiently particular] warrant can look anywhere where evidence described in the warrant might conceivably be located." *Id.* Even so, we have cautioned that this traditional analysis of a warrant's physical scope is "less effective in the electronic-search context." *Id.* This is so "[g]iven the enormous amount of data that computers can store and the infinite places within a computer that electronic evidence might conceivably be located." *Id.* As such, our

circuit's reasonableness analysis for electronic searches has trended away from focusing on the "what" permitted under a search warrant; instead, "we have focused on 'how' the agents carried out the search, that is, the reasonableness of the *search method* the government employed." *Id.* at 916–17 (emphasis added). The key question is "whether the forensic steps of the search process were reasonably directed at uncovering the evidence specified in the search warrant." *Id.* at 917.

Here, because the actual procedure used to search Mr. Salas's iPhone was done pursuant to the ultimately invalid Second Warrant, we are forced to wade into hypothetical waters. The appropriate inquiry is, if the Second Warrant was never issued, would the search process officers conducted been "reasonable"? We conclude that it would have been.

During the suppression hearing, the analyst who conducted the electronic search of Mr. Salas's devices, Computer Forensic Analyst Caleb Forness, described the procedure he would have used for searching a phone only suspected of containing electronic drug records.[8] Forness testified he would have first opened the iPhone's "Settings" application to identify the user, and he then would have "more than likely" opened the "Photos" application. Rec., vol. IV at 157. This described process appears "reasonably directed" at

---

[8] We note that before any electronic search, the data on Mr. Salas's devices was first forensically extracted. We upheld similar "extraction and search" methods (by which agents "make a byte-for-byte copy" of all of a cellphone's files) in *Burgess* and *Palms*. *See Burgess*, 576 F.3d at 1084; *Palms*, 21 F.4th at 701. Such methods preserve, without alteration, data from electronic devices to both make that data easier to forensically search and to protect against remote wipes.

finding the "evidence specified in the search warrant." *Loera*, 923 F.3d at 917. The First Warrant authorized the police to search for "records and/or receipts, written or electronically stored" related to "use and delivery" of drugs. Rec., vol. III at 87. This might have included receipts of sales, records of pay-owe sheets, or drug "trophy photos." Such evidence is often found on cellphones generally, as Officer Andrea Husted testified, *see* Rec., vol. IV at 60 ("In 2022, most people are keeping [receipts] on their cellphones instead of notebooks and sheets of paper."), and in photos specifically, as the district court observed, *see id.* at 177 ("I guess what I would say is I'm . . . thinking electronic receipts could include photographs of pay/owe sheets, photographs of—I mean, in my experience, I've seen photographs of drugs. I've seen photographs of pay/owe sheets."). Of course, a phone has many "areas" to search, but Forness's instinct to search Mr. Salas's Photo app conforms with our "conceivably located" standard. *Loera*, 923 F.3d at 916. It is certainly conceivable that records of drug transactions, perhaps photos of physical receipts, screenshots of electronic deposits, or drug "trophy photos," as examples, might have been saved in an iPhone and in its Photo application. *See Burgess*, 576 F.3d at 1078. Given that Forness's hypothetical search would have been limited, at least initially, to only the photos on Mr. Salas's iPhone, we hold that the process described would have been reasonable.

3.

Our final inquiry is whether, acting pursuant to a properly particular warrant and a reasonable search, officers would have inevitably discovered evidence of child pornography. The district court so held and we agree.

16

The record demonstrates by a preponderance of the evidence that the police would have inevitably discovered the child pornography on Mr. Salas's iPhone through lawful means independent from the invalid Second Warrant. As we held above, the police lawfully seized and were authorized to search Mr. Salas's iPhone pursuant to the valid First Warrant. On March 8, 2021, Caleb Forness digitally searched Mr. Salas's devices, including his iPhone, for evidence of drug transactions (under the First Warrant) and child pornography (under the Second Warrant). Had the constitutionally "impermissible conduct not taken place" here, i.e., had the Second Warrant never been issued, Forness would have still discovered the child pornography on Mr. Salas's iPhone. *Nix*, 467 U.S. at 447. Forness testified he would have used the same methodology when searching Mr. Salas's iPhone for evidence of drug transactions as he would when searching for child pornography: "Settings" first, "Photos" second. Rec., vol. IV at 157. There would have been no difference between the process Forness used in the search he *did* perform acting under the Second Warrant and the search he *would have* performed had he only been acting under the First Warrant. Rec., vol. IV at 157. This is further buttressed by Forness's testimony that whether he had forensically or manually reviewed the iPhone's photos, he would have inevitably stumbled upon Mr. Salas's child pornography. *Id.* at 150–51. Mr. Salas's child pornography was near the top of his iPhone's camera roll and, as Forness testified, he "almost immediately" found it as he began scrolling downward. *Id.*

Moreover, although the iPhone was initially locked, Forness testified that it would have been "just a matter of time" before he could "brute-force" his way in. *Id.* at 151. He

ultimately did not have to do so because, by happenstance, the iPhone's passcode was found on another of Mr. Salas's devices, his Sony laptop. However, because it is unclear whether that laptop was seized pursuant to the (valid) First or (invalid) Second Warrant, our analysis is whether, absent that laptop, Forness could have accessed the iPhone. Ostensibly that answer is yes, Forness would have eventually broken through the iPhone's lock and accessed its contents. Thus, Mr. Salas's child pornography would not have indefinitely stayed hidden behind his iPhone's locked passcode. It would have inevitably been discovered.

Finally, although the district court did not make a factual finding on the issue, the record indicates the regular practice of the police was to apply for and obtain so-called "piggyback warrants" when officers discovered evidence of a second crime while investigating. Detective Shannon Daley's testimony suggested this was a commonplace practice in the department. Moreover, Daley was able to provide a relatively detailed description of piggyback warrants, articulate their application process, and even describe established, informal practices the police used when applying for them. This all suggests that the police would have applied for another warrant upon Forness's discovery of Mr. Salas's child pornography.

Thus, all the necessary prerequisites of the inevitable discovery doctrine were satisfied here. The First Warrant was particular enough to authorize the police to seize and search Mr. Salas's iPhone. The hypothetical search procedure the police would have used to search Mr. Salas's iPhone for evidence of drugs and drug transactions was reasonable.

18

And the search methodology would have rendered discovery of Mr. Salas's child pornography inevitable. The district court was right to so hold.

B.

One last issue remains for us to resolve: whether Mr. Salas's incriminating March 31 statements should be suppressed. Mr. Salas argues that, assuming his first motion to suppress is reversed, his statements given during his March 31 interrogation should be similarly suppressed under the fruit-of-the-poisonous-tree doctrine. He relies on a statement given by the district court during the suppression hearing:

> To me, the confession is tied to the motion to suppress. If the affidavit or the search of the phone is valid, the motion to suppress Mr. Salas' statements would be denied . . . . Conversely, however, if the Court were to find that the motion to suppress the items seized from the second search warrant, then I think under the fruit-of-the-poisonous-tree doctrine, the statement would have to be suppressed because the statement that he made and the questions he was asked were derived from the officer having viewed the cellphone.

Rec., vol. IV at 173. The court's statement tracks well-worn law. As we noted above, if the exclusionary rule applies because of a Fourth Amendment violation, then the rule's ambit is "broad[,] and witnesses and evidence (including confessions), no matter how probative, discovered only as a result of a Fourth Amendment violation, must be excluded." *United States v. Pettigrew*, 468 F.3d 626, 634 (10th Cir. 2006). The defendant bears the burden of establishing the "causal connection between an illegal seizure and the evidence he seeks to suppress" or, said otherwise, that "the incriminating evidence 'would not have come to light *but for* the illegal [seizure].'" *United States v. Shrum*, 908 F.3d 1219, 1233 (10th Cir. 2018) (quoting *Wong Sun v. United States*, 371 U.S. 471 (1963)). The government can then

19

rebut this 'but for' causation by proving inevitable discovery. *Id.* at 1235. Both the government and Mr. Salas agree that "[a] confession cannot be 'fruit of the poisonous tree' if the tree itself is not poisonous." *Colorado v. Spring*, 479 U.S. 564, 571–72 (1987). *See* Aple. Br. at 41; Reply at 21–22. As such, Mr. Salas concedes that the "inevitable discovery issues [] are determinative of this issue." Reply at 22. We agree.

The district court found that Mr. Salas's confession on March 31 to the production and possession of the child pornography was the fruit of the search of his iPhone on March 8. This is a factual finding that we may only reverse if we find it is clearly erroneous. *Palms*, 21 F.4th at 697. We do not find any such error based on our own review of the record. If the child pornography found on Mr. Salas's iPhone would have been inevitably discovered absent the Second Warrant, then Mr. Salas's statement could not be suppressed. As we have determined, the child pornography on Mr. Salas's iPhone would have been inevitably discovered pursuant to the First Warrant. As was the case with Mr. Salas's motion to suppress the child pornography, the district court was correct in denying Mr. Salas's motion to suppress his March 31 statements.

We affirm.